J-S42030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL BARTLOW | |
| Appellant | No. 3534 EDA 2014 |

Appeal from the Judgment of Sentence November 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009398-2012

BEFORE:  SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED NOVEMBER 23, 2015**

Appellant, Michael Bartlow, appeals from the November 24, 2014 aggregate judgment of sentence of 9 to 20 years' imprisonment imposed following a bench trial, wherein he was found guilty of murder of the third degree and possession of an instrument of a crime (PIC).[1] Contemporaneously with this appeal, Appellant's counsel filed with this Court a petition to withdraw, together with an **Anders**[2] brief, averring the appeal

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c) and 907(a), respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967).

is frivolous. After careful review, we affirm and grant counsel's petition to withdraw.

The trial court has set forth the relevant factual history as follows.

Immediately after the attack that is the subject of this case, Mr. Raymond Moore was taken by ambulance to Albert Einstein Medical Center. During the ambulance ride, his heart stopped. He was kept on life support for one week when Ms. Moore allowed his life support to be withdrawn and he died.

Dr. Gary Lincoln Collins, Deputy Chief Examiner for the Philadelphia Medical Examiner's Office, gave expert testimony that Mr. Moore sustained nasal bone and jaw fractures in the attack. While he was at the hospital and the medical personnel were trying to stabilize his jaw, they placed a tracheostomy tube in his neck. The tube became obstructed with blood, causing Mr. Moore to be unable to breathe for an extended period, thus causing irreversible brain injury. Brain injury due to a clogged tracheostomy tube is a known risk of surgical treatment for head and jaw injuries like the ones Mr. Moore sustained.

Cathy Moore lived with her husband Raymond at an apartment complex on the 600 block of East Church Lane in 2012. [Appellant] knew them and lived in the same apartment complex. Prior to May 24, 2012, [Appellant] and the Moores had a friendly relationship. On the morning of May 24, 2012, Raymond Moore left the apartment to run errands; when he returned in the afternoon, Cathy Moore noticed that he seemed very inebriated. When she asked him for their car keys, he said that [Appellant] had them, as he had asked to borrow the car in order to take his aunt home.

Cathy Moore objected to this arrangement and shouted upstairs for [Appellant] to return the car keys to her. [Appellant] said that he had paid twenty dollars to be able to use the car so he could

take his aunt home. Ms. Moore offered him twenty dollars and told him that he could not use the car. When she handed him the twenty dollars, [Appellant] said that he had actually paid seventy-five dollars to use the car. She refused to give him that amount, and he refused to return the keys to her and to take the proffered twenty dollars. She then threatened to call the police in order to report that her car was being stolen.

As Ms. Moore was searching for her title in order to confirm ownership to the police, she heard her car alarm going off. She went outside and saw [Appellant] attempt to start the car; he was unable to do so. They argued about his use of the car, and at that point she called 911 to report the attempted theft of her car. They continued to argue, and as they were doing so, the keys slipped from [Appellant]'s hands. Both of them dove to retrieve the keys. She grabbed them first, and [Appellant] slapped her across the face and went back inside.

After [Appellant] retreated to the apartment building, Ms. Moore called 911 again to tell the dispatcher what had happened. [Appellant], back in his apartment, opened a window overlooking the car and told Ms. Moore that he was going to "f[***] up" her husband. Ms. Moore was attempting to start the car so that she could operate the power windows and raise them, but it would not start. Mr. Moore came out to the car, moving in a wobbly manner. He also attempted to start the car, but was unable to do so.

As Mr. Moore was attempting to start the car and Ms. Moore was waiting for police to arrive, [Appellant] came back outside. A young woman followed him out to where the car was parked. The two men began arguing, and they each took a swing at the other, but neither blow landed. Then Mr. Moore chased [Appellant], who ran between and around parked cars to evade him. When Mr. Moore grew tired and winded, he walked back toward the parked car where Ms. Moore was standing. [Appellant] then grabbed a brick and threw it at him,

> hitting him in the head. Mr. Moore fell to the ground. [Appellant] picked up the brick and hit him in the head with it again, and then kicked him twice. Then he and the young woman walked away. The attack was recorded on video.

Trial Court Opinion, 2/2/15, at 2-4 (citations omitted).

On June 13, 2012, Appellant was arrested and charged with the aforementioned crimes. Appellant's trial took place on August 18-19, 2014, at the conclusion of which Appellant was found guilty. On November 24, 2014, Appellant was sentenced to an aggregate judgment of sentence of nine to twenty years imprisonment.[3] On December 1, 2014, Appellant filed a timely post-sentence motion, which was denied by the trial court on December 3, 2014. On December 8, 2014, Appellant filed a timely notice of appeal.[4] On March 12, 2015, counsel filed a petition to withdraw, along with

_____

[3] Specifically, Appellant was sentenced to nine to twenty years for the murder of the third degree charge, no further penalty was assessed regarding the PIC charge.

[4] On December 15, 2014, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed a motion for an extension of time, which was granted, however, Appellant failed to timely comply with said extension. On January 28, 2015, Appellant filed a petition for *nunc pro tunc* reinstatement of his ability to file a Rule 1925(b) statement, and appended his Rule 1925(b) statement. On January 30, 2015, the trial court granted Appellant's petition and accepted the statement as timely filed.

an **Anders** brief. Thereafter, on May 15, 2015, Appellant filed a *pro se* brief.[5]

On appeal, counsel raises the following issues for our review.

[1.] [Appellant]'s third-degree murder conviction cannot stand because the Commonwealth failed to prove beyond a reasonable doubt that [Appellant]'s actions on May 24, 2012 criminally caused Raymond Moore's death on May 30, 2012.

[2.] The Commonwealth presented insufficient evidence to prove [Appellant] acted with malice when he struck Raymond Moore with a brick on May 24, 2012. This is so because the Commonwealth failed to prove beyond a reasonable [doubt] [Appellant] did not act in self-defense.

**Anders** Brief at 8, 12 (citations omitted).

Additionally, in his *pro se* brief, Appellant raises three issues for our review.[6] First, as also raised by counsel, Appellant argues the evidence was insufficient to convict him of murder of the third degree because "it was not proved beyond a reasonable doubt by the Commonwealth that Appellant's actions caused the death of the victim." Appellant's *Pro Se* Brief at 8.

_____

[5] We note, on June 5, 2015, Appellant filed a *pro se* motion to remand for a hearing in accordance with **Commonwealth v. Grazier** 713 A.2d 81 (Pa. 1998). **Grazier** is inapplicable in the instant matter as Appellant is currently represented by counsel, and has filed a *pro se* response to counsel's **Anders** brief. Accordingly, Appellant's June 5, 2015 motion to remand is denied as moot.

[6] We note that Appellant has not included a statement of questions, however, from the argument section of his brief we can ascertain his three contentions. **See** Appellant's *Pro Se* Brief at 8-9.

Second, Appellant argues the testimony of Cathy Moore was inconsistent with her previous statements, and therefore should have been discredited. *Id.* Finally, Appellant raises several claims of ineffective assistance of counsel. *Id.* at 8-9.

Preliminarily, we must address counsel's petition to withdraw. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) (citation omitted). Additionally, we review counsel's *Anders* brief for compliance with the requirements set forth by our Supreme Court in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361.

Pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005) and its progeny, counsel must comply with the following obligations to his client.

> Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief.

**Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), *quoting* **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004). Ordinarily, "this Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote and citation omitted). However, this Court recently held **Flowers** was not applicable when an appellant properly files a *pro se* response to an **Anders** brief. **Commonwealth v. Bennett**, --- A.3d ---, 2015 WL 5472807, at *4 (Pa. Super. 2015). Therefore, our review of the record in this case is limited to the issues raised by counsel and Appellant in their respective filings. **Id.** at *5.

Instantly, we are satisfied that counsel has complied with the technical requirements of **Anders** and **Santiago**. First, counsel has provided a

procedural and factual summary of the case with references to the record. *Anders* Brief at 3-8.  Second, counsel advances relevant portions of the record that arguably support Appellant's claims on appeal.  *Id.* at 8-10; 12-14.  Third, counsel concluded Appellant's appeal is frivolous.  *Id.* at 8. Lastly, counsel has complied with the requirements set forth in *Millisock*. As a result, we proceed with our independent review of the record.

In his first issue, Appellant argues the evidence was insufficient to convict Appellant of murder of the third degree because the Commonwealth failed to prove his "actions on May 24, 2012[,] criminally caused Raymond Moore's death on May 30, 2012."  *Anders* at 8.  Specifically, Appellant argues Moore's death "cannot be considered a natural and foreseeable consequence of his acts[,]" because "Dr. Collins said the brick blows inflicted *non-fatal* injuries."  *Id.* at 9 (emphasis in original).  In his second issue, Appellant argues the evidence was insufficient because "the Commonwealth failed to prove beyond a reasonable [doubt that] he did not act in self-defense." *Id.* at 12.

Our standard of review regarding the sufficiency of the Commonwealth's evidence is well settled.  "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the … verdict beyond a reasonable doubt."  *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa.

2014) (citation omitted), *cert. denied*, **Patterson v. Pennsylvania**, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." **Id.** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* **Diamond v. Pennsylvania**, 135 S. Ct. 145 (2014).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." **Commonwealth v. Tielsch**, 934 A.3d 81, 94 (Pa. Super. 2007) (citation omitted). "Third-degree murder does not require the specific intent to kill, though it does require malice." **Commonwealth v. Street**, 69 A.3d 628, 631-632 (Pa. Super. 2013).

"Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Tielsch*, *supra*.

Further, if a defendant presents evidence raising an issue of self-defense, the Commonwealth has the burden to disprove it beyond a reasonable doubt. *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011). The Commonwealth meets that burden if it proves any one of the following: (1) the defendant was not free from fault in provoking or continuing the conflict that resulted in the killing; (2) the defendant did not reasonably believe he was in imminent danger of death or serious bodily injury, and it was not necessary to kill in order to avoid that danger; or (3) the defendant violated a duty to retreat or avoid the danger. *Commonwealth v. Mouzon*, 53 A.3d 738, 741 (Pa. 2012). Further, "[a]lthough the Commonwealth is required to disprove a claim of self-defense … a [fact-finder] is not required to believe the testimony of the defendant who raises the claim." *Houser*, *supra* (internal quotation marks and citation omitted). Nonetheless, "the Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

After careful review, we conclude that the trial court's Rule 1925(a) opinion fully sets forth Appellant's claims, identifies the proper standard of

review, discusses the relevant law, and explains the basis for its conclusion that said evidence was sufficient to support its verdict and the Commonwealth disproved Appellant's claim of self-defense beyond a reasonable doubt. Instantly, we have carefully reviewed the entire record and Appellant's arguments, and we conclude that the thorough and well-reasoned opinion of the Honorable Barbara A. McDermott is in agreement with our own views. Accordingly, we adopt the trial court's February 2, 2015 opinion as our own for purposes of our appellate review.[7] **See** Trial Court Opinion, 2/2/15.

Appellant has raised additional issues in his *pro se* brief in response to counsel's **Anders** brief, which we address as follows.[8] Appellant contends, in a one sentence argument, that the testimony of witness, Cathy Moore, was inconsistent, and therefore should have been discredited. Appellant's *Pro Se* Brief at 8. A claim implicating the credibility of a witness raises a weight of the evidence claim.

We begin by acknowledging that "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v.**

---

[7] The parties are directed to attach a copy of the trial court's February 2, 2015 opinion to this memorandum in the event of further proceedings.

[8] As previously noted, we disposed of Appellant's primary contention, that the evidence was insufficient to convict him of murder of the third degree, as frivolous.

***Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). Further, it is well established that it is for the factfinder to determine the weight given to the evidence produced at trial. ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted). Because it is the role of the factfinder to weigh the evidence, an appellant seeking to challenge the weight of the evidence carries a heavy burden.

> If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

***Id.*** We also highlight that "[a] new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015). "[O]nly where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (emphasis in original; citation omitted).

Pennsylvania Rule of Criminal Procedure 607 pertains to challenges to the weight of the evidence and provides, in relevant part, as follows.

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]"). Our Supreme Court has explained that preserving a weight of the evidence claim in the trial court is important because the failure to do so "deprive[s the trial] court of an opportunity to exercise discretion on the question of whether to grant a new trial." *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (footnote omitted), *cert. denied*, *Sherwood v. Pennsylvania*, 559 U.S. 1111 (2010).

In this case, Appellant did not challenge the weight of the evidence in his post-sentence motion. *See* Appellant's Post-Sentence Motion, 12/1/14, at 2 (solely raising a claim that the trial court abused its discretion in sentencing Appellant). Additionally, we have reviewed the record and Appellant did not raise this issue at any time during the proceedings in the trial court. Instead, Appellant raises this issue for the first time on appeal. As a result, we conclude Appellant's weight of the evidence claim is waived

for want of preservation. **See** Pa.R.A.P. 302 ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Finally, Appellant raises claims of ineffective assistance of trial counsel. Appellant's *Pro Se* Brief at 8-9. However, said claims are not ripe for review, but may be raised in a collateral proceeding. Our Supreme Court recently reaffirmed the holding of **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002) in **Commonwealth v. Holmes**, 79 A.3d 562, (Pa. 2013). Therein the Court held "claims of ineffective assistance of counsel are to be deferred to [Post Conviction Relief Act, (PCRA), 42 Pa.C.S.A. §§ 9541-9546] review; trial courts should not entertain claims of ineffectiveness upon postverdict motions; and such claims should not be reviewed upon direct appeal." **Id.** at 576. The **Holmes** Court noted two narrow exceptions for "extraordinary circumstances" to the broader rule, holding "where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted," and allowing review for "good cause," such as the shortness of a sentence, of "multiple, and indeed comprehensive, ineffectiveness claims" if such review is accompanied by a knowing, voluntarily, and express waiver of PCRA rights. **Id.** at 577-578. Instantly, neither of these exceptions applies. Therefore, Appellant's ineffective assistance of counsel issues are premature and we decline to

address the merits. This is without prejudice to Appellant's right to present these ineffectiveness issues in a timely PCRA petition.

Based on the foregoing, we conclude the issues raised in the **Anders** and *pro se* briefs either lack merit or are not properly before us at this juncture. As a result, we agree with counsel's assessment that the appeal is wholly frivolous. Accordingly, we affirm the trial court's November 24, 2014 judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted. Application for remand denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2015

OPENING BRIEF Ex. 3

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   : CP-51-CR-0009398-2012
  :
  :
  :
v.   : 3534 EDA 2014    **FILED**
  :
  :     FEB 0 2 2015
MICHAEL BARTLOW   :    Criminal Appeals Unit
  :    First Judicial District of PA
  :

**OPINION**

McDermott, J.                 February 2, 2015

### Procedural History

On June 13, 2012, the defendant, Michael Bartlow, was arrested and charged with Third Degree Murder, Possession of an Instrument of Crime (PIC), and Simple Assault. On August 18, 2014 the defendant appeared before this Court and waived his right to be tried by a jury. This Court proceeded to conduct a waiver trial.[1] On August 19, 2014, this Court found the defendant to be guilty of Third Degree Murder and PIC.[2]

On November 24, 2014, after reviewing presentence and mental health reports, this Court imposed a sentence of nine to twenty years in prison for Third Degree Murder, with no further penalty for PIC. On December 1, 2014, the defendant moved for reconsideration of his sentence. On December 3, 2014, this Court denied reconsideration of sentence.

On December 8, 2014, the defendant filed a timely Notice of Appeal and trial counsel moved to withdraw. On December 10, 2014, appellate counsel was appointed. On December

---
[1] The defendant had a prior mistrial in this matter, on January 7, 2014 before the Honorable Teresa Sarmina.
[2] At that time, the Commonwealth moved to *nolle prosse* the Simple Assault charge.

15, 2014, this Court issued an order pursuant to Pa.R.A.P. 1925(b). On December 24, 2014, the defendant filed for an extension of time in which to file a response to this Court's Rule 1925(b) order. On December 31, 2014, this Court granted a one-week extension. On January 28, 2015, the defendant filed for *nunc pro tunc* reinstatement of his ability to file a Rule 1925(b) statement, with such statement appended thereto. This Court granted reinstatement with no objection from the Commonwealth and accepted the statement as timely on January 30, 2015.

### Facts

Immediately after the attack that is the subject of this case, Mr. Raymond Moore was taken by ambulance to Albert Einstein Medical Center. During the ambulance ride, his heart stopped. He was kept on life support for one week when Ms. Moore allowed his life support to be withdrawn, and he died. N.T. August 19, 2014, p. 52.

Dr. Gary Lincoln Collins, Deputy Chief Examiner for the Philadelphia Medical Examiner's Office, gave expert testimony that Mr. Moore sustained nasal bone and jaw fractures in the attack. While he was at the hospital and the medical personnel were trying to stabilize his jaw, they placed a tracheostomy tube in his neck. The tube became obstructed with blood, causing Mr. Moore to be unable to breathe for an extended period, thus causing irreversible brain injury. Brain injury due to a clogged tracheostomy tube is a known risk of surgical treatment for head and jaw injuries like the ones Mr. Moore sustained. *Id.* at 124-138.

Cathy Moore lived with her husband Raymond at an apartment complex on the 600 block of East Church Lane in 2012. The defendant knew them and lived in the same apartment complex. Prior to May 24, 2012, the defendant and the Moores had a friendly relationship. On the morning of May 24, 2012, Raymond Moore left the apartment to run errands; when he returned in the afternoon, Cathy Moore noticed that he seemed very inebriated. When she asked

2

him for their car keys, he said that the defendant had them, as he had asked to borrow the car in order to take his aunt home. *Id.* at 5-18.

Cathy Moore objected to this arrangement and shouted upstairs for the defendant to return the car keys to her. The defendant said that he had paid twenty dollars to be able to use the car so he could take his aunt home. Ms. Moore offered him twenty dollars and told him that he could not use the car. When she handed him the twenty dollars, the defendant said that he had actually paid seventy-five dollars to use the car. She refused to give him that amount, and he refused to return the keys to her and to take the proffered twenty dollars. She then threatened to call the police in order to report that her car was being stolen. *Id.* at 18-20.

As Ms. Moore was searching for her title in order to confirm ownership to the police, she heard her car alarm going off. She went outside and saw the defendant attempt to start the car; he was unable to do so. They argued about his use of the car, and at that point she called 911 to report the attempted theft of her car. They continued to argue, and as they were doing so, the keys slipped from the defendant's hands. Both of them dove to retrieve the keys. She grabbed them first, and the defendant slapped her across the face and went back inside. *Id.* at 20-28.

After the defendant retreated to the apartment building, Ms. Moore called 911 again to tell the dispatcher what had happened. The defendant, back in his apartment, opened a window overlooking the car and told Ms. Moore that he was going to "fuck up" her husband. Ms. Moore was attempting to start the car so that she could operate the power windows and raise them, but it would not start. Mr. Moore came out to the car, moving in a wobbly manner. He also attempted to start the car, but was unable to do so. *Id.* at 28-34.

As Mr. Moore was attempting to start the car and Ms. Moore was waiting for police to arrive, the defendant came back outside. A young woman followed him out to where the car was

parked. The two men began arguing, and they each took a swing at the other, but neither blow landed. Then Mr. Moore chased the defendant, who ran between and around parked cars to evade him. When Mr. Moore grew tired and winded, he walked back toward the parked car where Ms. Moore was standing. The defendant then grabbed a brick and threw it at him, hitting him in the head. Mr. Moore fell to the ground. The defendant picked up the brick and hit him in the head with it again, and then kicked him twice. Then he and the young woman walked away. *Id.* at 36-45. The attack was recorded on video. *Id.* at 178-192.

Mr. Moore often carried a pocket knife, but on the night of May 24th, 2012, he left the pocket knife in his apartment on his dresser. *Id* at 52.[3]

## Issues

On appeal, the defendant argues that the evidence was insufficient to establish the defendant's guilt for Third Degree Murder and PIC, that the verdict was against the weight of the evidence, and that trial counsel was ineffective for failing to call Tamika Brooks to testify that the defendant acted in self-defense.

In arguing that the evidence is insufficient to establish the defendant's criminal culpability, the defendant argues both that the Commonwealth has not established causation and that the Commonwealth has not established that the defendant was not acting in self-defense.

Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt. *Commonwealth v. Baumhammers*, 960 A.2d 59, 68 (Pa. 2008). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly

---

[3] In her preliminary hearing testimony, Cathy Moore said that she did not know her husband to carry a knife. However, at trial, she explained that she had been confused as to what the question meant at the preliminary hearing, and that in any case, he was not carrying a knife during the confrontation at issue. *Id.* at 53-54.

circumstantial evidence. *Commonwealth v. Estepp*, 17 A.3d 939, 943 (Pa. Super. 2011) *(citing Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa. Super. 2010)). The fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. *Commonwealth v. Treiber*, 874 A.2d 26, 30 (Pa. 2005).

Murder in the Third Degree is any unlawful killing committed with malice, but without the specific intent to kill nor committed in the commission of a felonious act. 18 Pa.C.S. § 2502(c); *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super 2011); *See also; Commonwealth v. Santos*, 876 A.2d 360, 363-64 (2005). Malice is defined as:

> A wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

*Dunphy*, 20 A.3d at 1219 *(citing Commonwealth v. DiStefano*, 784 A.2d 574, 582 (1995). Malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012).

The defendant argues that the Commonwealth did not disprove the defendant's claim of justification. To prevail on a justification defense, there must be evidence presented that shows the defendant:

> "(a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) ... was free from fault in provoking the difficulty which culminated in the slaying; and (c) ... did not violate any duty to retreat."

*Commonwealth v. Samuel*, 590 A.2d 1245, 1247-48 (Pa. 1991); *see also Commonwealth v. Harris*, 703 A.2d 441, 449 (Pa. 1997).

The use of deadly force is not justified where there is an avenue of retreat, as long as the defendant knows that avenue of retreat is available. *Commonwealth v. Ventura*, 975 A.2d 1128,

5

1143 (Pa. Super. 2009)*(citing Commonwealth v. Palmer*, 359 A.2d 375 (Pa. 1976), *distinguished on other grounds, Commonwealth v. Pressley*, 887 A.2d 220 (Pa. 2005)).

Here, it is clear that the defendant had a duty to retreat. Indeed, as a factual matter, he did not need even to retreat, because his adversary was in the process of doing so when the defendant made his fatal attack. Further, there can be no justification defense where there is no reasonable belief of imminent danger, as when your much older, inebriated opponent is winded and is walking away from you. The defendant's attack was both cowardly and unjustifiable under the law; this claim is meritless.

The defendant argues that the decedent's death was caused by medical circumstances that are too remote or attenuated from the underlying assault to hold him criminally accountable for the decedent's death. 18 Pa.C.S. § 303 establishes that "[c]onduct is the cause of a result when: (1) it is an antecedent but for which the result in question would not have occurred; and (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense." The defendant's conduct need not be the only cause of the victim's death in order to establish the causal connection required for a finding of criminal causation; criminal responsibility may be properly assessed against an individual whose conduct was a *direct and substantial factor* in producing the death even though other factors combined with that conduct to achieve the result. *Commonwealth v. Nunn*, 947 A.2d 756 (Pa. Super. 2008), *alloc. denied*, 960 A.2d 838 (Pa. 2008)(emphasis added).

In *Commonwealth v. Spotti*, 94 A.3d 367 (Pa. Super. 2014)*(en banc)*, an inebriated driver was driving erratically, causing another driver to swerve. This other driver then struck a disabled van that was pulled to the side of the road; the van then struck a tow truck that was stopped in front of it. Two people who had been trying to change the van's tire were severely injured, and

6

the people in the swerving car were injured as well. The inebriated driver did not strike anyone, but was nevertheless found to be criminally culpable for the aggravated assaults because his unlawful behavior necessitated the swerve, and thus it was a direct and substantial cause of the resulting injuries.

In *Commonwealth v. Rementer*, 598 A.2d 1300 (Pa. Super. 1991), the Superior Court set forth a two-part test for determining criminal causation. First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. *Id.* at 1305; 18 Pa.C.S. § 303(a)(1). A victim's death cannot be entirely attributable to other factors; rather, there must exist a "causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." *Rementer*, 598 A.2d at 1305, n. 3. Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible. *Id.* at 1305.

*Rementer* arose from a sustained and brutal assault on a woman, who was run over while trying to get help from passing motorists as her assailant chased her. Her attacker was found guilty of her murder, and his conviction was upheld on appeal. "In our view, the fatal result of appellant's assault is not rendered unforeseeable merely because the precise agency of death, i.e. the [passing] station wagon, could not have been foretold. Appellant perpetrated a deadly assault on the decedent in and around an automobile on a public street with other moving vehicles in close proximity." *Id.* at 1308.

Likewise, here, the defendant leveled a horrifying assault at the decedent, breaking his jaw, and even after the decedent fell unconscious to the ground, the defendant continued his attack, striking his head again and breaking his nose, and then kicking him. The tracheotomy

was a vital part of the emergency medical treatment necessitated by the defendant's malicious behavior. A clogged tracheostomy tube is a known risk of that procedure, and one that the decedent (like any other similarly-situated patient) could not avoid. Brain death, and the decedent's eventual withdrawal from life support, necessarily followed therefrom. Because the defendant's actions were a direct and substantial factor in bringing about the defendant's death, this claim is meritless.

In claiming that the verdict is against the weight of the evidence, the defendant argues that Cathy Moore's testimony is so inconsistent that it cannot be relied upon to support a conviction. Weight of the evidence and sufficiency of the evidence are discrete inquiries. An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005)(*citing Commonwealth v. Sullivan*, 820 A.2d 795, 805-806 (Pa. Super. 2003); *Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000).

"The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)(*citing Widmer*, 744 A.2d at 752). The Superior Court has explained that the test is whether the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003). For

7

8

one to prevail on a challenge of the weight of the evidence, the verdict must be so contrary to the evidence as to shock one's sense of justice. *Id.* (*citing Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa. Super. 1997).

Here, the defendant's argument as to supposed inconsistencies in Cathy Moore's testimony is belied by the ample physical and documentary evidence that establishes his culpability in this matter. Again, it is specifically because the decedent was walking away from the defendant at the time he was brutally attacked that there can be no dispute as to the defendant's guilt. Ms. Moore's testimony was uncontradicted by the documentary evidence, including the video recordings, and was completely consistent with all relevant evidence in this case. This Court finds her testimony to be credible. This claim is meritless.

Finally, the defendant asks for a hearing under the "*Bomar* exception" to establish ineffectiveness of trial counsel for failing to call Tamika Brooks, who witnessed the attack.[4] The defendant claims that Brooks would testify that the decedent was brandishing a knife during the fatal encounter.

In *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), our Supreme Court held that absent certain specified circumstances, claims of ineffective assistance of counsel are to be deferred to post-conviction review rather than on post-verdict motions or during direct appeal. *Holmes* does not completely close the door on ineffectiveness claims for direct review, but it does make clear that such claims are rarely to be entertained, and only where extraordinary circumstances compel such review. Here, the defendant has made no argument as to such extraordinary circumstances. In fact, such circumstances are not present. Cathy Moore gave credible testimony that the decedent was not armed with a knife during the fatal attack. However, even if the defendant could establish that he had brandished a knife while he chased

---

[4] *See Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003).

the defendant, it was obvious that he had given up the chase at the time the defendant attacked him. Thus there was no ground at that time for the defendant to believe he was in imminent danger, even if the decedent had a knife. Because the proffered testimony would not have changed the outcome of the trial, even if the Court had accepted it as credible, the defendant cannot establish any extraordinary circumstance under *Holmes* that would compel unitary review in this case.[5]

For the foregoing reasons, the defendant's judgment of sentence should be affirmed.

BY THE COURT,

Barbara A. McDermott, J.

---

[5] Nor does the defendant specify whether he understands the necessity of waiving review under the Post-Conviction Review Act, or whether he is ready to make such a waiver. *See Holmes*, 79 A.3d at 564.