874 A.2d 26

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Stephen E. TREIBER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 2004.

Decided May 16, 2005.

Timothy John Lucas, Esq., Erie, for Stephen E. Treiber.

Christopher D. Carusone, Esq., Amy Zapp, Esq., Anthony John Krastek, Esq., Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

Stephen E. Treiber has filed a direct appeal from the judgment of sentence of death following his convictions for first degree murder, 18 Pa.C.S. § 2502(a), arson endangering persons, *id.*, § 3301(a), arson endangering property, *id.*, § 3301(c), and recklessly endangering another person, *id.*,

§ 2705. The convictions stem from a house fire in which appellant's daughter was burned to death. We affirm.

On the night of March 9, 2001, after smelling and seeing smoke coming from appellant's house, a neighbor, Kathleen Roemer, went to assist. At the time, appellant, his girlfriend Denise Riddle, and his two-year-old daughter Jessica, were present. Ms. Roemer noticed appellant and Ms. Riddle on a second story deck; Ms. Riddle screamed for help while appellant calmly stood by with his arms folded. Appellant asked about his dogs and later, when referring to Jessica, said, "The firemen will get her. She's probably dead anyway." N.T., 9/30/02, at 97. Jessica died as a result of the fire.

The Commonwealth introduced testimony from members of the fire and police departments that Jessica's bedroom door was open, and appellant was unusually calm, inquiring only about his dogs; appellant stated "[i]t's probably too late anyway," *id.*, at 242, for Jessica. Further testimony established the fire had been started using gasoline, clothing, straw, and candles, and the security system on the house had been disabled.

Evidence of appellant's motive and intent was introduced at trial. Appellant's unwillingness to pay child support was established by testimony from Jodie Treiber, Jessica's mother. Testimony also came from Jamie Pianta, who stated appellant discussed his plans to commit the murder, including purchasing rope, hay, gas, and candles, and said he would kill Jessica to avoid paying support.

The Commonwealth also introduced evidence of preparatory activities and behavioral changes of appellant. Ms. Riddle testified concerning appellant's rule that shoes not be worn in the house, his objection to Ms. Riddle going out, and his rule that bedroom doors must be closed and locked. This was significant because on the night of the fire, appellant kept his shoes in his bedroom and urged Ms. Riddle to go out that night. During the fire, Jessica's door was open.

Detective Michael Dugan testified to a threatening note left on appellant's mailbox. The detective was able to connect the

note to appellant by a dog hair on the envelope which, when compared to the hair on one of appellant's dogs, was 1,100 times more likely to have come from that dog than any other dog.

The jury found three aggravating circumstances which outweighed its finding of two mitigating circumstances, and sentenced appellant to death. The three aggravating circumstances found by the jury were: (1) appellant committed a killing while in the perpetration of a felony (arson), 42 Pa.C.S. 9711(d)(6); (2) appellant knowingly created a grave risk of death to another person other than the victim of the murder, *id.*, 9711(d)(7); and (3) the victim was a child under 12 years of age, *id.*, 9711(d)(16). The jury found appellant had no significant history of prior criminal convictions, *id.*, 9711(e)(1), and a positive work history, falling within 42 Pa.C.S. 9711(e)(8)s catchall provision, as mitigating circumstances.

Appellant raises the following issues:

1. Whether the death verdict was against the weight of the evidence.

2. Whether the trial court erred in refusing to dismiss a seated juror and substitute an alternate.

3. Whether the trial court erred in admitting Commonwealth evidence which by inference was in violation of the courts prior order *in limine.*

4. Whether the trial court erred in admitting specific testimony of key prosecution witness Denise Riddle by permitting her to testify regarding a supposed threat appellant made regarding a separate arson and as to the sexual relationship between Ms. Riddle and appellant.

5. Whether the trial court erred and abused its discretion in not permitting appellant to represent himself.

6. Whether the Commonwealth violated the dictates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in not disclosing exculpatory evidence in its possession.

Before addressing appellants arguments, we begin by independently reviewing the evidence to determine wheth-

er it was sufficient to sustain appellant's first degree murder conviction. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444 (1983), *reh'g. denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). To determine whether the evidence was sufficient, we accept the evidence in the light most favorable to the Commonwealth, and all reasonable inferences arising therefrom. *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728, 732 (1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987). Section 2502(a) of the Crimes Code states, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). Intentional killing is "[k]illing by means of . . . willful, deliberate and premeditated killing." *Id.,* § 2502(d). A "willful, deliberate and premeditated killing" occurs where the actor has manifested the specific intent to end the life of the victim. *Nelson,* at 732 (citation omitted). A person who commits arson endangering persons is guilty of first degree murder "if the fire or explosion causes the death of any person and was set with the purpose of causing the death of another person." 18 Pa.C.S. § 3301(a)(2). "Where the conviction for first degree murder is based upon arson the Commonwealth must . . . establish that there was a fire of incendiary origin[,] . . . the accused deliberately caused the fire[,] . . . [and] the fire was the cause of death." *Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189, 194 (1994) (citations omitted).

As the evidence was sufficient to establish the fire was of incendiary origin, that appellant deliberately set the fire, with the specific intent to kill his daughter, and that the cause of Jessica's death was the fire, the evidence was sufficient to sustain appellant's conviction for first degree murder.

Appellant argues the death verdict was against the weight of the evidence. Specifically, he contends the jury erred in finding only the first two of the following five mitigating factors presented: no significant history of prior criminal convictions, 42 Pa.C.S. 9711(e)(1); a positive work history, *id.,* 9711(e)(8); successful adaptation to prison, *id.;* a history of

showing compassion and mercy to others, *id.;* and a history of neurological impairment and brain damage, *id.,* because the evidence establishing the mitigating factors was uncontested.

There is no requirement a jury find all mitigating factors presented simply because the Commonwealth fails to rebut the existence of such factors. *See Commonwealth v. Breakiron,* 524 Pa. 282, 571 A.2d 1035, 1043 (1990). The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence, and to assess the credibility of witnesses. *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 101 (1995). As to these issues, an appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203, 1206 (1982). The question of the existence of a mitigating factor is for the jury. *Breakiron,* at 1043.

> It is axiomatic that once a jury has been properly instructed on the nature of aggravating and mitigating circumstances as defined in the statute, as well as on the statutory scheme for balancing one against the other, it is not for reviewing courts to usurp the jury function and to substitute their judgment for that of the jury.

*Id.* The jury was presented with the evidence and chose, in its discretion, to reject it with respect to three mitigating factors, as was its right. The jury was properly instructed as to the parties' respective burdens concerning aggravating and mitigating factors and the balancing of factors, and we will not substitute our judgment for that of the jury. *See* N.T., 10/8/02, at 123–29; 42 Pa.C.S. § 9711(c).

Appellant next asserts the trial court erred in refusing to dismiss a seated juror who violated the courts sequestration rules. During trial, Ms. Barczynski, an employee of the hotel where the jurors were sequestered, alleged the juror in question was drinking at a local bar and made statements indicating bias or prejudice. Following an *in camera* hearing, the trial court found the juror credible and Ms. Barczynski incredible, and it concluded the juror had not left the hotel or acted improperly. "The discharge of a juror

656

is within the sound discretion of the trial court. Absent a palpable abuse of that discretion, the court's determination will not be reversed." *Commonwealth v. Jacobs*, 536 Pa. 402, 639 A.2d 786, 790 (1994) (citing *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627, 632 (1977)). Based on the credibility findings of the trial court, we find no abuse of discretion in refusing to discharge this juror.

 Appellant next contends the trial court erred in admitting evidence in violation of an *in limine* order, precluding evidence of a 1995 arson in appellants home. The evidence he challenges was a threatening note authored by appellant that read, "Get rid of the dogs or Ill kill them and burn you out again." Appellant objects to the word "again" as referring to his involvement in other fires and contends this word should have been redacted.

 The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871, 877 (1998). The trial court determined the threat note had no relationship to the *in limine* ruling as no specific prior fire was mentioned, nor was there any evidence related to the 1995 fire. Trial Court Opinion, 2/27/03, at 17. The mere word "again" does not tell the jury about any prior crime; it does convey the relevant degree of his earnestness which the writer sought to create in the mind of the originally intended reader. We cannot conclude the trial court abused its discretion in admitting this evidence.

 Appellant argues the trial court erred in admitting testimony of Denise Riddle regarding a threat appellant made to burn down the Gaslight, a local bar, and the sexual relationship between Ms. Riddle and appellant. During trial, Ms. Riddle testified appellant had forbidden her from going to the Gaslight after learning she had met a former boyfriend there, N.T., 10/2/02, at 79–80; appellant was so adamant against her going to the Gaslight that he threatened to burn it down if she ever went there again, *id.,* but appellant's attitude changed in

the week prior to the fire as he repeatedly urged her to go to the Gaslight on the night of the fire. *Id.*, at 108. Ms. Riddle also testified her sexual relationship with appellant changed around the time of the fire; Ms. Riddle and appellant typically engaged in daily sexual intercourse, but did not have sexual intercourse on the days leading up to the fire. *Id.*, at 64, 115–16.

Appellant does not question the probative value of this evidence, as he acknowledges it indicates a change in his behavior, but contends the probative value is outweighed by the prejudicial effect. With respect to the testimony regarding his threat, appellant points out not only that the testimony was unduly prejudicial given that he was on trial for arson, but also that it was not necessary to show he changed his attitude about Ms. Riddle frequenting the Gaslight. Similarly, appellant contends Ms. Riddle's testimony concerning the fact he had sexual intercourse on a daily basis "did nothing but disparage [a]ppellant in the eyes of the jury." Brief of Appellant, at 32.

> The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

*Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1998) (internal citations omitted).

The trial court found the testimony was relevant to show appellant's state of mind and preparatory activities. While most relevant evidence is "prejudicial," as it goes to prove the case against him, the court concluded that no unfairly prejudicial circumstances existed. The threat testimony showed appellant's change in behavior because it evidenced how strongly he felt about Ms. Riddle staying away from the Gaslight and consequently, how very strange it was

when he urged Ms. Riddle to go to the Gaslight on the night of the fire. Because no evidence existed that appellant actually acted upon the threat, it was not unduly prejudicial. The sexual relationship testimony showed appellant's unusual actions in the days preceding the fire and any resulting prejudice was minimal, as appellant and Ms. Riddle were consenting adults who lived together in a romantic relationship. There was no tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. We see no abuse of discretion in this conclusion. Further, even if there were error in the admission of the threat or sexual relationship testimony, it was harmless in light of the other overwhelming evidence of guilt.

 Appellant next alleges the trial court erred in not permitting him to represent himself. Because appellant made his request to represent himself during trial, the grant of such right was within the trial court's discretion. *See Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849, 863 (1998). "In justifying the need to timely raise the right of self-representation, courts have recognized, among other things, the need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury." *Id.* (citation omitted). The trial court conducted a colloquy and denied the request, finding that allowing appellant to represent himself when the guilt phase of trial was nearly complete would have confused the jury and caused disruption, inconvenience, and delay. We are offered no reason to find an abuse of discretion in the court's decision to deny appellant's request to represent himself.

 In his final claim, appellant argues the Commonwealth failed to disclose exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the United States Supreme Court held "the suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution." *Id.,* at 87, 83 S.Ct. 1194. Evidence is "material" under *Brady,* such that the failure to disclose it justifies setting aside a conviction, only where there exists a reasonable probability that, had the evidence been disclosed, the result at trial would have been different. *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Appellant avers the Commonwealth made exculpatory financial information available but did not specifically turn it over to the defense; appellant argues that simply making the information available is not sufficient under *Brady.* Contrary to appellant's contention, "no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." *Commonwealth v. Morris,* 573 Pa. 157, 822 A.2d 684, 696 (2003) (citing *Commonwealth v. Paddy,* 569 Pa. 47, 800 A.2d 294, 305 (2002)). Moreover, appellant's assertion that the Commonwealth's files were too voluminous for him to discover helpful documents is frivolous where the files contained appellant's own financial documents and the Commonwealth provided reports summarizing the file materials to appellant. *See* N.T., 5/1/03, at 15–17, 21. Making evidence available is not suppressing it; appellant's *Brady* claim is meritless.

▮ Finally, having concluded appellant is not entitled to relief on any of the claims that he raises, we must also conduct the review mandated by 42 Pa.C.S. § 9711(h)(3), which requires this Court to affirm the sentence of death unless we determine:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d).

42 Pa.C.S. § 9711(h)(3).

Our review of the record establishes the sentence imposed was not the product of passion, prejudice, or any other arbitrary factor. Additionally, we conclude the evidence presented was sufficient to support the jury's finding of three aggra-

vating circumstances: (1) the killing was committed during the perpetration of a felony; (2) in the commission of the offense, appellant knowingly created a grave risk of death to another person in addition to the victim; and (3) the victim was a child under 12 years of age. Accordingly, we affirm the verdict and the sentence of death.

The Prothonotary of the Supreme Court of Pennsylvania is directed to transmit the complete record of this case to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

Judgment of sentence affirmed.