J-S73025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :             PENNSYLVANIA
                                         :

                v.                       :

LENNY REID                            :

           Appellant         :    No. 369 MDA 2019

Appeal from the Judgment of Sentence Entered January 31, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000066-2017

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:       **FILED: FEBRUARY 4, 2020**

Lenny Reid appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after a jury found him guilty of one count each of possession of a firearm prohibited,[1] possession with intent to deliver (PWID),[2] and possession of drug paraphernalia.[3]  Upon careful review, we affirm.

On November 10, 2016, an anonymous caller notified the City of Harrisburg police that Reid had entered unit 5D of Hall Manor (Unit 5D).  At the time, Reid was wanted for violating his parole on a prior conviction.  The

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(32).

police responded by sending several officers to prevent Reid's escape and apprehend him pursuant to an arrest warrant. Upon arrival, officers took up positions accounting for the layout of Unit 5D. The residence had two floors with a front and rear entrance. The second floor was divided into a front bedroom, a rear bedroom, and a bathroom. Officer Daniel Antoni, along with other officers, knocked on the front door. Simultaneously, Officer Donald Bender positioned himself behind Unit 5D. Tyra Williams, the head of the household, opened the front door. When officers asked if anyone else was present, Williams indicated her children were on the first floor and her friend Mamie Barnes was upstairs with a friend. Officer Antoni informed Williams as to the purpose behind their presence at Unit 5D and asked for her permission to search for Reid. Williams consented.

Officers cleared the first floor; Williams and her children were the only persons present. Officer Antoni then called for the individuals upstairs to come down. Barnes descended with a small child and her friend Jose Aponte. Officer Bender then radioed Officer Antoni and stated he had observed a different individual, a dark-skinned black male,[4] stick his head out of the rear bedroom window on the second floor, look around, and close the blinds after spotting the police.

---

[4] Officer Antoni testified Aponte "is not a dark-skinned male." N.T. Trial 12/12/18, at 84.

Officer Antoni requested Officer Bender bring a K-9 in to search the second floor. At this point, Reid showed himself, came down the stairs, and surrendered. After the police placed Reid in custody, officers performed a cursory check to see if anyone else was in Unit 5D. No other individuals were present. Officer Antoni then asked Williams if he could search the house for contraband. She consented. In the rear bedroom on the second floor, Officer Antoni found and seized narcotics packaging supplies, a semi-automatic pistol, heroin bundles, and a cell phone.

Prior to trial, Reid moved to exclude any reference to the purpose behind the police's presence at Unit 5D, namely, effectuating an arrest warrant for his violation of parole. The court granted his request. At trial, Officer Bender stated "the warrant was [of] a felony nature[,]" prompting defense counsel, Aaron Holt, Esquire, to move for a mistrial on the grounds that the Commonwealth violated the terms of the court's pre-trial order. N.T. Trial, 12/12/18, at 37. The court denied Reid's motion.

During closing arguments, Attorney Holt advanced the theory that Aponte solely possessed the heroin and the handgun found in the rear bedroom on the second floor of Unit 5D, and further alleged the police erred by failing to investigate Aponte as a suspect. [5] **See id.** at 136–37 ("It was

_____

[5] Aponte testified that he and Barnes were asleep in the front, upstairs bedroom. N.T. Trial, 12/12/18, at 70. Aponte further testified he woke up to let Reid into Unit 5D, returned to the front bedroom to go back to sleep, was

[Aponte] and him alone."). Specifically, Attorney Holt highlighted the police's failure to take the following steps: (1) search Aponte for drugs or cash; (2) search for and analyze DNA evidence from the handgun or the drugs; or (3) obtain a warrant to search the cell phone found in the rear bedroom. The court found it necessary to clarify points of law concerning Attorney Holt's above-referenced assertions relating to an officer's authority to search individuals and the procedure for searching a cell phone. Attorney Holt protested vigorously at sidebar.

The jury found Reid guilty on all counts. On January 31, 2019, the court sentenced Reid to an aggregate sentence of four to eight years' incarceration, followed by two years' probation. Reid did not file post-sentence motions. He timely filed a notice of appeal on February 27, 2019. Both Reid and the court complied with Pa.R.A.P. 1925.

Reid raises the following claims for our review:

1. When the Commonwealth elicited prior-bad-act testimony in violation of the court's previous ruling on a motion *in limine*, did not the court abuse its discretion by refusing to grant defendant's motion for mistrial?

2. Was it not improper for the court in instructing the jury to include *sua sponte* commentary disputing the legal validity of certain claims argued by defense counsel when there was no factual or legal basis for the court to instruct the jury in such terms and when the court assumed the role of an advocate?

---

unaware of what Reid was doing at Unit 5D, and never entered the back bedroom. ***Id.*** at 71, 76.

Brief of Appellant, at 5.

First, Reid argues Officer Bender violated the pre-trial ruling precluding evidence of Reid's prior bad acts by stating the Harrisburg Police were attempting to effectuate a "warrant [of] a felony nature" and that the trial court subsequently abused its discretion by failing to declare a mistrial. *See* Brief of Appellant, at 26–27.

We have outlined the relevant standard of review as follows:

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. It is primarily within the trial court's discretion to determine whether [a] defendant was prejudiced by the challenged conduct. On appeal, therefore, this Court determines whether the trial court abused that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Padilla*, 923 A.2d 1189, 1192 (Pa. Super. 2007) (citations and quotations omitted); *see also Commonwealth v. Boczkowski*, 846 A.2d 75, 95 (Pa. 2004) ("A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.").

Orders resolving motions *in limine* bind parties at trial in an identical fashion to suppression orders. *Padilla*, *supra* at 1194 ("[B]oth a suppression motion and a motion *in limine* settle, before trial, issues regarding the exclusion or admission of evidence."). These motions exist, in part, to provide

a pre-trial opportunity to exclude evidence "that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error [would require] the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion." ***Id.***

"Determining whether prejudice has occurred is a fact[-]specific inquiry." ***Commonwealth v. Metzer***, 634 A.2d 228, 235 (Pa. Super. 1993). Our analysis is guided, in part, by the scope of the prohibition established by the trial court's pre-trial ruling. ***See Padilla***, ***supra*** at 1195–96 (comparing effect of relatively narrow restrictions established by pre-trial orders in ***Commonwealth v. Treiber***, 874 A.2d 26 (Pa. 2005) and ***Commonwealth v. Edwards***, 762 A.2d 382 (Pa. Super. 2000) with "much broader" ruling "prohibiting any reference to . . . incarceration and parole" in ***Padilla***). Pre-trial orders excluding evidence of prior bad acts are guided by the long-established prohibition against "evidence of crimes other than those charged in the case . . . [being] presented at trial to prove the defendant's criminal character or his tendency towards committing criminal acts." ***Padilla***, ***supra*** at 1194 (quotation omitted). Passing references to prior criminal activity, however, do not require reversal "unless the record illustrates definitively that prejudice results. Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of another criminal offense." ***Id.*** at 1195 (quotations omitted).

*Treiber*, *supra* and *Edwards*, *supra* provide examples of narrowly-tailored orders resolving motions *in limine*. In *Treiber*, *supra*, the trial court issued a pre-trial order precluding evidence of a previous fire in the defendant's home.[6] *Treiber*, *supra* at 31. The court, however, admitted a threatening letter authored by the defendant to his girlfriend, in which he stated, "[g]et rid of the dogs or I[']ll kill them and burn you out again." Trial counsel objected to the word "again[,]" arguing it referred to the defendant setting other fires and contended the word should have been redacted. *Id.* Our Supreme Court found the "the threat note had no relationship to the *in limine* ruling as no specific prior fire was mentioned, nor was there any evidence related to the [previous] fire." *Id.* The Court reasoned, as the word "again" failed to convey any information to the jury about a prior crime, the trial court did not abuse its discretion in admitting the evidence. *Id.*

In *Edwards*, *supra*, the defendant was wanted for a January 8, 1995 robbery. *Edwards*, *supra* at 384. He was arrested on January 29, 1995, following a "scuffle" in a department store, during which a gun fell out of his waistband. *Id.* The defendant was subsequently charged with robbery and possession of an instrument of crime for the January 8 incident, but was not charged for his conduct on January 29. *Id.* In a pre-trial ruling, the trial court precluded the Commonwealth from introducing testimony "that would

---

[6] The defendant in *Treiber* was charged with, *inter alia*, burning his own home down. *Treiber*, *supra* at 29.

establish directly or by inference that [defendant] was arrested for other offenses arising out of the [January 29] incident[.]" *Id* at 388. The court permitted a police officer and a department store employee to testify regarding the January 29 incident, describing the scuffle, the gun, and the defendant being transported to the police station. *Id.* This Court concluded "the Commonwealth complied with the [t]rial [c]ourt's ruling and did not elicit facts . . . to indicate that Appellant had been arrested or charged with criminal offenses in connection with [the January 29] incident." *Id.* Therefore, we concluded the testimony was not prejudicial, as it "did not expressly or by reasonable implication communicate to the jury the involvement of Appellant in another criminal offense." *Id.* at 388–89.

The two cases above are brought into sharp relief by *Padilla*, *supra*, which involved a far broader pre-trial ruling prohibiting "any reference to [Appellant's] incarceration and parole[.]" *Padilla*, *supra* at 1195. At trial, an officer described arriving at the scene of the crime by stating, in relevant part, "[a]pparently [Appellant] just got out of jail[.]" *Id.* at 1192. This Court, taking the "much broader" ruling into account, found the officers remarks "a direct reference to Appellant's recent incarceration." *Id.* at 1196. We, therefore, concluded the testimony "expressly and by reasonable implication[] communicated to the jury Appellant's involvement in another criminal offense." *Id.*

Instantly, Attorney Holt anticipated the prejudicial impact of Reid's status as a parolee during pre-trial motions. ***See*** N.T. Trial 12/12/18, at 12. He sought to preclude any mention of Reid's status as a parolee on the record in the following exchange:

> [Attorney Holt:] . . . And there's another issue as well. The reason the officers went to the home is that somebody said that . . . Reid had a warrant out for his arrest. He was on state parole at the time. I guess he absconded.
>
> So I don't want any mention of—a motion *in limine*—to limit the testimony as to why the officers were present in the home. I don't think that's relevant or germane to the fact at issue.
>
> The court: Well, there's always a need for context. So let's find out—how were you[, the Commonwealth,] planning on explaining the officers present at—
>
> [The Commonwealth:] Your Honor, my plan was to refer to . . . Reid as a person of interest that the police were interested in speaking with and that they had received a tip that he was there— or not even a tip. It doesn't have to be a tip. Just that they were aware that a person they were interested in speaking with was at this residence and we were interested in speaking with him.
>
> [Attorney Holt:] Could I confer with my client for just a moment?
>
> The court: Absolutely.
>
> [Attorney Holt:] All right, Your Honor, if we could just not get into the fact that he was on parole at the time, that would be fine by me. The fact that he had a warrant, I mean the jury can know that but what the warrant was for is not relevant.
>
> The court: All right. Well, if indeed it was for a parole violation being probably being more prejudicial than probative, all right. So let's just keep it as a warrant and not mention that it was parole and we're good.

N.T. Trial, 12/12/18, at 11–12 (capitalization adjusted).

Officer Bender, the first witness presented by the Commonwealth, affirmed his presence at the scene resulted from "a wanted person with a warrant being at [Unit] 5D[.]" N.T. Trial, 12/12/18, at 32–33. Attorney Holt moved for a mistrial after the following exchange:

> [Commonwealth:] And what would be—what would be the purpose of the K-9 unit coming in to assist with that, what would procedure be?
>
> [Officer Bender:] Procedure for this would be that the warrant was [of] a felony nature which is required for use of a K-9 in this application [sic]. So having that the first floor was already cleared by officers, I was at the bottom of the stairs and I gave two[ . . . [7]]

*Id.* at 37.

Reid argues the court erred by failing to grant a mistrial as the Commonwealth's questioning "elicited the type of prejudicial reference—a warrant of a felony nature—that the pretrial ruling was designed to prevent." Brief of Appellant, at 26 (quotation omitted). We disagree. We find the above-mentioned pre-trial ruling to be narrowly tailored such that it permitted mention of the police's presence for the purpose of effectuating a warrant and precluded testimony revealing the warrant's origin—a parole violation. ***Compare Treiber***, ***supra*** at 31 (precluding mention of prior arson) ***and*** ***Edward***, ***supra*** at 388 (precluding testimony expressing or implying Appellant was charged for conduct during incident leading to his arrest) ***with***

---

[7] At this point, Attorney Holt's objection interrupted Officer Bender. N.T. Trial, 12/12/18, at 37.

- 10 -

*Padilla*, *supra* at 1195 (prohibiting "any reference to [Appellant's] incarceration and parole[.]").

The exchange to which Attorney Holt objected related to the procedure under which the Harrisburg Police deploy their K-9 unit. *See* N.T. Trial, 12/12/18, at 37. Officer Bender did not portray Reid as a parolee. *See id.* at 37. Rather, Officer Bender's limited disclosure informed the jury he was present at Unit 5D because of an arrest warrant. N.T. Trial, 12/12/18, at 37. The jury later learned the warrant was for Reid's arrest, that Reid was arrested, and that, prior to Reid's arrest, he had been in a room containing contraband. *Id.* at 39, 87–90. Officer Bender's statement, however, did not expressly or by reasonable implication communicate any information regarding Reid's violation of parole or his involvement in any criminal episode other than the one at trial; the statment, therefore, did not prejudice his case. *Compare Padilla*, *supra* at 1192, 1196 (finding statement that Appellant "just got out of jail" prejudicial as it was "a direct reference to Appellant's recent incarceration") *with Edward*, *supra* at 388 (finding witnesses' testimony detailing fight leading to appellant's arrest, gun dropped by appellant, and transporting appellant to police station did not prejudice defendant because witnesses did not specifically mention arrest or indicate filing criminal charges). Consequently, the court did not abuse its discretion by denying Reid's motion for a mistrial. *See Padilla*, *supra* at 1192.

Next, Reid argues the court abused its discretion by providing commentary during its jury instruction, without a factual or legal basis, which undermined Attorney Holt's closing argument. Brief of Appellant, at 30.

We review the trial court's jury instructions as follows:

[T]he reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009) (citations and quotations omitted).

"It is properly the function of the trial judge to define and frame for the jury those factual issues which are contested and which require the weighing of conflicting evidence." *Commonwealth v. Kelly*, 446 A.2d 941, 944 (Pa. Super. 1982); *see* Pa.R.Crim.P. 647(E) ("The trial judge may give any other instructions to the jury . . . at anytime during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case."). Such instruction is proper, "provided[:] (1) there is reasonable ground for any statement [the court] may make; and (2) [the court] clearly leaves to the jury the right to decide all the facts and every question involved in the case regardless of any opinion of the court thereon." *Commonwealth v. Nesbitt*, 419 A.2d 64, 67 (Pa. Super. 1980).

Instantly, Attorney Holt advanced the theory that the Harrisburg Police failed to investigate whether the confiscated contraband belonged to one of the other individuals in Unit 5D—particularly Aponte—stating as follows during closing argument:

> You heard testimony from the officer that when . . . Barnes and . . . Aponte walked down the stairs[,] neither of those individuals were searched. Although they did not see which room those individuals came out of, the officers did not take the opportunity to stop them, pat these individuals down, see if [Aponte] had drugs on his person, see if he had four or five grand in his pocket.
>
> . . .
>
> You also heard testimony that there was a cell phone in that back bedroom—a cell phone. I mean, this is—it does—the Commonwealth—the officer was practically given a gift wrapped way of corroborating who was in that back bedroom.
>
> . . .
>
> [An officer] could have just as easily executed a search warrant, gotten into that phone. There may have been pictures of [Aponte] in that phone. There could have been text messages from [Aponte] to whomever. There could have been [e]-mails, social media accounts that they could have gone through, the whole nine.

N.T. Trial, 12/12/18, at 138.

The court responded to Attorney Holt's above-recounted argument during its jury charge as follows:

> I don't normally comment on arguments of counsel[,] but in certain cases I just want to make sure that there's no confusion. I know there was some reference to whether the police searched the people coming down the steps.
>
> Just be aware that a police officer going into a private home with permission to search for someone that they have a warrant for

- 13 -

does not give authority to the police to search anybody else in that house.

I mean, there's limitations on what they can do. They need to have their own independent probable cause. So there [were] a lot of things that were raised that the police may or may not have done such as fingerprinting and all the rest. That's fair game.

But to say that they didn't search private citizens in someone's home when they really don't have a legal authority to do it is kind of a tough one. I want to make sure we keep things in fair game as far as argument.

Similarly[,] in searching a phone, [] a judge would have to sign an order like that[;] that's only done when there's specific probable cause that [can] justify the invasion of the privacy of someone's phone and the contents of it. So that actually isn't done for the convenience of an investigation. There has to be probable cause to believe there is evidence on a particular phone.

*Id.* at 174–75.

Reid asserts "[t]here was no factual or legal basis for the court to give those instructions[,]" arguing the court's instruction informed the jury "categorically that there was no way for the police to have searched Aponte" and suggested "that the police could not have procured a search warrant with respect to the phone." *Id.* at 34–35.

Reid mischaracterizes the court's statements. The above-recounted instructions describe discrete criminal procedure concepts—searching individuals in a home and searching cell phones. *Id.* at 174–75. In explaining these concepts, the court did not make a definitive pronouncement as to how they would be applied; instead, as the following passage reveals, the court attempted to clarify any potential misconceptions created by Attorney Holt's

- 14 -

closing argument and direct the jury towards making findings-of-fact relevant to the case at hand:

> [T]he statements that I made are how the [c]ourt views the law as it comes to whether someone can be searched in someone's home or whether a phone can be searched in a private home as opposed to something that was tied to a specific criminal investigation.
>
> . . .
>
> I told you the law isn't what I want it to be. . . . And that's why I have to rule the way I truly do. But I don't want it to interfere with your fact-finding function and that is you've got to concentrate on the evidence that was there or the evidence that's not there, but you can't take a legal conclusion and try to build something beyond [that.]

*Id.* at 187.

The police had consent to search Unit 5D for contraband. *See* N.T. Trial. 12/12/18, at 86–87 (affirming Williams gave consent for police to "search the house for anything illegal."). This, however, did not give the police the authority to search everyone in the house, as there neither existed probable cause for an "all persons present" search warrant nor reasonable suspicion to suspect anyone posed a danger to the police. *See Commonwealth v. Wilson*, 631 A.2d 1356, 1358 (Pa. Super. 1993) (noting disfavor for "all persons present" warrants; requiring "affidavit of probable cause [containing] sufficient fact to justify a search of everyone found on the premises."); *see also Commonwealth v. Bozeman*, 205 A.3d 1264, 1274 (requiring officers "articulate specific facts from which he could reasonably infer that the

- 15 -

individual was armed and dangerous" for ***Terry***[8] frisk).  Likewise, the court correctly stated a search of a cell phone requires a warrant supported by probable cause*.  **See Commonwealth v. Fulton**, 179 A.3d 475, 487 (Pa. 2018) ("[A] warrant is generally required for law enforcement to search a cell phone.").

While neither description—either that pertaining to police authority for searching citizens in private homes while effectuating an arrest warrant or that contemplating the requirements for searching a cell phone—constitutes an exhaustive doctrinal explanation, the court's commentary served only to frame issues brought into question by Attorney Holt's closing argument.  **See Kelly**, **supra** at 944 (permitting court to "define and frame for the jury those factual issues which are contested").  As the court possessed the authority to instruct the jury on these subjects, and as nothing in its instructions was "inadequate, erroneous, or prejudicial[,]" we find no abuse of discretion in the court's charge.  **Fletcher**, **supra** at 792.  Reid's second claim, therefore, fails.

Judgment of sentence affirmed.

---

[8] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/04/2020</u>