J-S07044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS ANTHONY WILSON | : | |
| | : | |
| Appellant | : | No. 1589 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 18, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0004629-2020

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 28, 2023**

Appellant, Nicholas Anthony Wilson, appeals from the judgment of sentence imposed by the Bucks County Court of Common Pleas, following his jury trial convictions for burglary, criminal trespass, criminal attempt to commit a theft by unlawful taking of movable property, and criminal attempt to receive stolen property.[1]  We affirm.

The trial court set forth the relevant facts and procedural history in this matter as follows:

> On March 18, 2020, Warminster Township Police Department responded to a report of a burglary in progress. (N.T. Trial, 8/9/21, at 59).  Victim reported that she had left her house to go grocery shopping for about thirty (30) minutes. (*Id.* at 18).  Victim had left her seventeen (17) year old son home.  (*Id.* at 16, 18).  When she returned home from grocery shopping her front door was open.  (*Id.*

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 3503(a)(1)(i), and 901(a) respectively.

at 21). She entered her home and found Appellant, a man who she did not know and had never seen before, inside her house. (*Id.* at 21-22). Appellant was holding a yoga mat, hoverboard, and a pair of UGGs in a box, which belonged to the Victim and her family. (*Id.* at 22). Victim told Appellant to leave her home and she followed him out. (*Id.* at 26). She then called 911. (*Id.* at 27). Appellant proceeded to leave the residence before police officers arrived. (*Id.* at 86-87). Victim's son was in the home throughout the entire ordeal. (*Id.* at 62).

\* \* \*

Prior to Appellant's jury trial, Appellant was offered a negotiated guilty plea by the Commonwealth. Before the start of the jury trial, this [c]ourt ensured Appellant was aware that if he was found guilty by a jury, he would be subject to a mandatory minimum sentence. Appellant, after knowingly and intelligently acknowledging the mandatory minimum, refused the negotiated guilty plea and proceeded to trial.

On August 9, 2021, Appellant's jury trial began. On August 10, 2021, the jury found him guilty as to burglary of overnight accommodations with a person present, criminal trespass by entering a structure, criminal attempt to commit a theft by unlawful taking of movable property, and criminal attempt to receive stolen property. Sentencing was deferred at the request of Appellant.

On August 11, 2021, the Commonwealth filed notice of mandatory minimum sentence, which stated:

1. In the event of conviction of the crime of burglary (F1), 18 Pa.C.S. § 3502(a)(1)(ii) as charged in the above-captioned criminal case, the court is required by law to sentence [Appellant], who has been previously convicted of a crime of violence (aggravated assault, (F1), 18 Pa.C.S. § 2702(a)(1)), in accordance with Section 9714 of Title 42 of the Pennsylvania Consolidated Statutes, (Sentences for second and subsequent offenses), which requires the imposition of a minimum sentence of at least ten (10) years' incarceration. 42 Pa.C.S. § 9714(a)(1).

Sentencing was originally scheduled for November 22, 2021, this was continued at the request of Appellant. On January 18, 2022, Appellant requested another continuance of sentencing. [The trial] court denied that request and sentencing proceeded on that day. Appellant was then sentenced to a period of ten to twenty years' imprisonment at a state correctional institution on the charge of burglary, all other charges merged with the burglary charge. Appella[nt] was given credit for time-served between March 18, 2020 (his initial date of incarceration) through July 9, 2020 (the date he received bail), as well as credit for time-served between May 20, 2021 (his date of re-incarceration after violating the terms of his bail) through January 18, 2022 (the date of this sentencing).

On January 26, 2022, Appellant filed a motion to modify and/or reconsider sentence and a motion to bar application of mandatory minimum sentencing statute. [The trial] court held a hearing for reconsideration of sentence on May 20, 2022. On that day, [the trial] court denied Appellant's motions. Subsequently, Appellant filed notice of this appeal on June 17, 2022. On June 21, 2022, [the trial] court filed an order for a concise statement. Appellant filed his concise statement of errors complained [of] on appeal on November 1, 2022.

(Trial Court Opinion, filed 11/21/22, at 1-3) (record citation formatting provided; footnotes and unnecessary capitalization omitted).

Appellant raises the following four issues on appeal:

A. Was the verdict of guilty of burglary supported by sufficient evidence?

B. Did the trial court err in precluding Appellant from presenting evidence regarding a large monetary judgment he received on the day of the incident?

C. Did the trial court err in admitting the testimony of Detective Bunda regarding DNA evidence?

D. Did the trial court err in imposing a mandatory minimum

sentence in violation of the United States and Pennsylvania Constitutions' prohibitions against cruel and unusual punishment?

(Appellant's Brief at 8) (unnecessary capitalization omitted).

In his first issue, Appellant contends that the evidence presented by the Commonwealth at trial was insufficient to establish his guilt of burglary. Appellant asserts that the Commonwealth failed to prove the requisite *mens rea*, namely, that he entered the house with the intent to commit a crime therein. Appellant insists that his actions at the time of the incident do not support an inference that he had the intent to commit a crime inside the home. Specifically, Appellant maintains that he entered the home because the door was unlocked and there was a "for sale" sign on the property. Appellant emphasizes that he did not attempt to conceal his identity, and he left the premises when Victim asked him to do so. Appellant concludes the evidence was insufficient to support his burglary conviction, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our well-settled standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be

resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The version of Section 3502 of the Crimes Code that was in effect at the time of Appellant's offenses defined burglary, in relevant part, as follows:

**§ 3502. Burglary**

**(a) Offense defined.**—A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

18 Pa.C.S.A. § 3502(a)(1)(i) (effective Jan. 3, 2017 to Sept. 8, 2022).

The Commonwealth is not required to specify what crime a defendant is

intending to commit and it need not prove the underlying crime in order to sustain a conviction. ***Commonwealth v. Brown***, 886 A.2d 256, 260 (Pa.Super. 2005), *appeal denied*, 588 Pa. 743, 902 A.2d 969 (2006). Rather, "[t]he intent to commit a crime after entry may be inferred from the circumstances surrounding the incident." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1022 (Pa.Super. 2002), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002) (citation omitted). "While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances." ***Id.*** (citations omitted).

Instantly, Appellant entered the house of a stranger and gathered several items—a yoga mat, a hoverboard, and a pair of UGG boots—all without permission. Viewed in the light most favorable to the Commonwealth as verdict winner, it was reasonable for the jury to infer that under the totality of the circumstances, Appellant intended to commit a crime in the home. ***See Sebolka, supra***; ***Lambert, supra***. Accordingly, Appellant's first issue is meritless.

In his second issue, Appellant argues that the trial court erred when it precluded him from offering evidence of a monetary judgment which he had learned he was entitled to earlier on the day of the events at issue. Appellant claims that this evidence was relevant to whether he would have entered the

home with an intent to commit a theft. Appellant insists he had a right to present this relevant evidence in his defense. Appellant concludes the court's evidentiary ruling was erroneous, and this Court must grant relief. We disagree.

When reviewing the admission or exclusion of evidence, our standard of review is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. *Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

> Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Building upon this definition, Rule 402 provides, in full, as follows: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Thus, while the general rule of the admissibility of relevant evidence is subject to various exceptions, the rule that irrelevant evidence is not admissible is categorical. Accordingly, "[t]he threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 577 (2005); *Commonwealth v. Treiber*, 582 Pa. 646, 874 A.2d 26, 32 (2005); *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344, 350 (1998).

*Commonwealth v. Cook*, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008).

Instantly, the trial court stated that it excluded Appellant's proposed testimony that he was getting a $10,000.00 judgment "because it is irrelevant to the case at hand." (Trial Court Opinion at 10). The court continued that "[t]he fact that Appellant had a piece of paper stating that at some point in the future he may receive $10,000 does not tend to make it more or less probable that he committed a burglary on the date in question." (*Id.*) We see no abuse of discretion in the court's evidentiary ruling.[2] *See Cook,*

_____

[2] In support of this issue, Appellant relies on *Commonwealth v. Yale*, ___ Pa. ___, 249 A.3d 1001 (2021). In *Yale*, the Pennsylvania Supreme Court considered whether a defendant was entitled to introduce evidence of **third person guilt** to show that the defendant was not the perpetrator of the crime charged. Our Supreme Court held that the heightened standard for admissibility of "bad acts" evidence under Rule 404(b) did not apply to evidence introduced against a third party, rather than the defendant. The Court concluded that determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by Rules 401, 402 and 403. *Yale, supra* at ____, 249 A.3d at 1022.
*(Footnote Continued Next Page)*

*supra*. *See also Montalvo, supra*. Thus, Appellant's second issue merits no relief.

In his third issue, Appellant claims that the trial court erred when it permitted the Commonwealth to introduce testimony from Officer Bunda that DNA testing of swabs collected at the residence would have cost hundreds or thousands of dollars. Appellant insists that evidence concerning the cost of DNA testing was irrelevant and inadmissible. He further argues that admitting the testimony suggested that the Commonwealth would be relieved of its burden of proof if recovering evidence costs too much money. Appellant concludes that admission of this testimony was improper, and this Court must grant relief. We disagree.

It is well settled that "trial judges retain wide latitude as to the scope of cross-examination and will not be reversed absent an abuse of that discretion." *Commonwealth v. Murphy*, 182 A.3d 1002, 1005 (Pa.Super. 2018) (citation omitted). As this Court has explained:

> One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door'... by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of

---

Here, Appellant is not seeking to admit evidence of third person guilt, and the trial court did not exclude the evidence based on Rule 404(b). Rather, the court found that the proposed testimony concerning the $10,000.00 judgment was irrelevant. Therefore, the court's ruling did not violate our Supreme Court's holding in **Yale, supra** and that decision is distinguishable.

the Commonwealth, then the Commonwealth can probe further into the objectionable area.

*Commonwealth v. Lewis*, 885 A.2d 51, 54-55 (Pa.Super. 2005) (quoting

*Commonwealth v. Stakley*, 365 A.2d 1298, 1299-1300 (Pa.Super. 1976)).

Here, the trial court analyzed this issue as follows:

> Defense [c]ounsel broached the topic of DNA testing during cross examination of the first testifying officer. (N.T. Trial at 72). Defense counsel then extensively questioned the second testifying officer regarding DNA testing. (*Id.* at 95-97). It was not until the redirect of the second testifying officer that the Commonwealth introduced testimony regarding DNA testing, which was directly in response to statements elicited by the [d]efense on cross examination. (*Id.* at 98).
>
> *       *       *
>
> Once again it should be noted that… Appellant opened the door to any testimony regarding DNA testing. Additionally, Appellant explicitly stated he would be requesting an adverse inference because DNA analysis did not occur. (*Id.* at 76). Thus, to rebut this defense, testimony regarding DNA testimony was highly relevant and properly admitted.

(Trial Court Opinion at 8) (record citation formatting provided). On this record, we see no abuse of discretion in the trial court's ruling permitting the Commonwealth to introduce testimony concerning the DNA testing. *See Murphy, supra*; *Lewis, supra*. Appellant's third issue merits no relief.

In his final issue, Appellant claims that his mandatory minimum sentence violated the United States and Pennsylvania Constitution's prohibition against cruel and unusual sentences. He initially claims that based on the particular facts and circumstances of this offense, the instant conviction

for burglary should not be considered a crime of violence for purposes of the recidivist statute. In addition, Appellant argues that the sentence in this matter was grossly disproportionate to the crime, where he left when asked to do so and he had no contact with the individual who was in the home at the time. Appellant concludes that his sentence of 10 to 20 years' imprisonment (which was double the guideline range had the mandatory minimum sentence not applied) constitutes cruel and unusual punishment and must be vacated. We disagree.

Appellant's challenge to the application of a mandatory minimum sentencing provision constitutes a challenge to the legality of sentence. **Commonwealth v. Foster**, 960 A.2d 160, 168 (Pa.Super. 2008), *aff'd*, 609 Pa. 502, 17 A.3d 332 (2011). Our scope and standard of review in such cases is well settled: "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." **Commonwealth v. Leverette**, 911 A.2d 998, 1001 (Pa.Super. 2006) (citations omitted). "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." **Id.** Furthermore, to the extent that Appellant is challenging the constitutionally of the statute imposing a mandatory minimum sentence, "because the constitutionality of a statute is a question of law, our standard of review is *de novo* and our scope is plenary." **Commonwealth v. Baker**, 621 Pa. 401, 406 n.3, 78 A.3d 1044, 1047 n.3

(2013).

The Pennsylvania Sentencing Code provides as follows:

**§ 9714. Sentences for second and subsequent offenses**

**(a)  Mandatory sentence.**—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S.A. § 9714(a)(1).  "Burglary is a crime of violence as a matter of law." ***Commonwealth v. Spotz***, 616 Pa. 164, 232, 47 A.3d 63, 104 (2012). ***See also Commonwealth v. Chester***, 627 Pa. 429, 443, 101 A.3d 56, 64 (2014) (stating: "[I]t is well established within our case law that '[b]urglary is a crime of violence as a matter of law,' signifying that first-degree burglary necessarily constitutes violent behavior in all contexts") (quoting ***Spotz, supra*** at 232, 47 A.3d at 104).

Here, Appellant was convicted of burglary, which is a crime of violence as a matter of law. ***See Spotz, supra***.  The Commonwealth notified both the trial court and Appellant that it intended to seek the mandatory minimum sentence.  Appellant does not dispute that at the time of the commission of

- 12 -

the crimes at issue he had previously been convicted of a crime of violence.[3]

Therefore, the mandatory minimum sentencing provisions of Section 9714(a)(1) apply; and, based on the statute, the trial court was required to sentence him to a minimum sentence of at least ten years of total confinement.  **See** 42 Pa.C.S.A. § 9714(a)(1).

Next, we consider whether the statutory minimum sentence itself constitutes cruel and unusual punishment under either the Eighth Amendment of the United States Constitution or Article 1, § 13 of the Pennsylvania Constitution.[4]  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences which are grossly disproportionate to the crime."  **Baker, supra** at 406, 78 A.3d at 1047 (citation omitted).   In reviewing whether a sentence is grossly disproportionate, we consider: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the

_____

[3]  Appellant has an extensive criminal history, commencing with his adjudication of delinquency of aggravated assault while a juvenile.  As an adult, he was convicted of simple assault in December 2000; forgery in March 2001; driving under the influence in April 2003; receiving stolen property in September 2004; aggravated assault, defiant trespass and attempted retail theft in March 2005, and retail theft in June 2020. (N.T. Trial, 8/10/21, at 174).

[4] "The Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution.  Therefore, the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution."  **Commonwealth v. Yasipour**, 957 A.2d 734, 743 (Pa.Super. 2008) (citations omitted).

same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." **Baker, supra** (quoting **Commonwealth v. Spells**, 612 A.2d 458, 462 (Pa.Super. 1992) (*en banc*)). Notably, this Court is not obligated to reach the second or third prongs of the test unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." **Id.** (citation omitted).

> A presumption exists that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth when promulgating legislation. Duly enacted legislation is presumed valid, and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional. Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion. Moreover, this Court has articulated the principle that the Pennsylvania prohibition against cruel punishments, like its federal counterpart against cruel and unusual punishments, is not a static concept. The concept must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. The most accurate indicators of those evolving standards of decency are the enactments of the elected representatives of the people in the legislature.

**Id.** at 411–12, 78 A.3d at 1050 (citations, internal quotation marks and brackets omitted). "In weighing the offense's gravity, both [an individual's] current felony and his long history of felony recidivism must be placed on the scales. Any other approach would not accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." **Ewing v. California**, 538 U.S. 11, 12, 123 S. Ct. 1179, 1181, 155 L.Ed.2d 108 (2003).

Here, in considering whether Appellant's sentence of 10 to 20 years'

imprisonment was grossly disproportionate to his burglary conviction, we must consider both the facts of the instant matter, Appellant's conviction of a felony crime of violence, as well as his history of felony recidivism. *See Ewing, supra*. Appellant was sentenced to a mandatory minimum ten years of imprisonment after committing a burglary of a stranger's home. This crime of violence was preceded by his lengthy criminal history with a prior crime of violence—a felony conviction for aggravated assault from 2005. Ultimately, considering both crimes of violence, and Appellant's criminal history generally, we conclude that the mandatory minimum sentence imposed in this matter was not grossly disproportionate to the crime. Rather, the sentence was amply supported by Appellant's criminal record. The instant sentence fell squarely within the legislature's choice of sanctions and is "justified by the [legislature's] public-safety interest in incapacitating and deterring recidivist felons." *Ewing, supra* at 12, 123 S.Ct. at 1181, 155 L.Ed.2d 108. As Appellant has not established that the mandatory minimum sentence he received was grossly disproportionate to the crimes which he committed, it is unnecessary to consider the second and third prongs of the comparative analysis for cruel and unusual sentences. *See Baker, supra*. Thus, Appellant's final issue merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/28/2023</u>