J-S40044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.                          :
:
:
CRISTIAN ENRIQUE BROWN       :
:
Appellant           :   No. 60 EDA 2024

Appeal from the Judgment of Sentence Entered June 26, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003748-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:             **FILED MARCH 14, 2025**

Cristian Enrique Brown ("Brown") appeals from the judgment of sentence imposed following his convictions for seven counts of sexual abuse of children — possessing child pornography ("possessing child pornography") and criminal use of communication facility.[1]  We affirm.

The trial court summarized the following:

On May 24, 2021, the Chester County Detectives' Office received information from the National Center for Missing and Exploited Children [("NCMEC")].  The information was a cyber tip from analysts at the Delaware County Internet Crimes Against Children Task Force [("ICAC")].  The tip indicated that an electr[onic] service provider, Adobe Systems, Inc. [("Adobe Systems")], reported that on May 8, 2021, someone using the IP address of 100.14.100.41 uploaded two . . . still images that

---

[1] ***See*** 18 Pa.C.S.A. §§ 6312(d), 7512(a).  The Commonwealth initially charged Brown with 100 counts of possessing child pornography for possessing 700 images of child pornography.  However, at trial, the Commonwealth reduced the charges to seven counts, each comprising 100 images.

appeared to depict child pornography. The IP address belonged to [Brown. Brown lived with his brother and parents.]

A search warrant was obtained and six (6) computers were taken from [Brown's] residence [on July 13, 2021. Brown] was working when the search warrants were executed. [Chester County] Detective Gerald Davis, Jr. [("Detective Davis"),] went to [Brown's] work to seize his cell phone pursuant to the search warrant. While there, [Brown] elected to speak with the detective[, and his interview was audio recorded]. He admitted that he viewed child pornography. He would look at images on his cell phone or school computer, and then transfer the images to the computer tower in the living room of his residence. [In this statement, Brown also repeatedly claimed that some of the images "were left over" from a prior juvenile adjudication for possessing child pornography.]

A search of [Brown's] computer tower revealed 700 images of child pornography. A majority of the child victims shown in the photographs were between two and [fourteen] years old. The two . . . images originally reported by Adobe Systems were discovered among the 700 pictures found. Based on the foregoing, [on November 16, 2021, the Commonwealth charged Brown] with multiple counts of [possessing child pornography] and criminal use of a communication facility. . . .

Trial Court Opinion, 4/10/24, at 1-2, 5 (unnecessary capitalization omitted).

On July 21, 2022, Brown filed a motion to exclude, at trial, any reference to his prior 2019 juvenile adjudication for possessing child pornography.[2] The trial court deferred ruling on this motion until the Commonwealth filed a

_____

[2] The certified record on appeal did not include this motion to exclude evidence, although there is a docket entry, in the trial docket, showing Brown filed this motion. We further note that at the suppression hearing, the trial court indicated that it had not received a copy of the motion. *See* N.T., 8/25/22, at 13.

Pa.R.E. 404(b) motion regarding other acts evidence. *See* N.T., 8/25/22, at 14.

On the same day he filed the above motion, Brown also filed a motion to suppress the computers recovered from his house. He challenged the search warrant for his residence, asserting that there was no probable cause to search his home computer.

On August 25, 2022, the trial court held a hearing on Brown's motion to suppress. Brown's sole argument, in both his motion and at the hearing, was that: (1) the cyber tip from the NCMEC or ICAC stated "that two pornographic images were sent to laptops at a school;" (2) based on that information, the police obtained and executed search warrants for the school and learned that the laptops were registered to Brown; however (3) a search of the laptops revealed no incriminating evidence. N.T., 8/25/22, at 7; *see also* Motion to Suppress, 7/21/22, at 1. At the suppression hearing, Brown explained:

> [T]he police filed a third application for a search warrant to search the computers at [Brown's] house where he lives with his mother, father and brother. And my point is just that, I don't see how the MEC [*sic*] report that . . . two pornographic images were sent to the laptops at the school gives them probable cause to search the computer at the home.

N.T., 8/25/22, at 7.

The Commonwealth disputed Brown's characterization of the cyber tip. Instead, the Commonwealth maintained that the tip: (1) did not state what devices the images were uploaded to; and (2) stated that the images were "uploaded from an IP address" that matched Brown's home. *Id*. at 9. The

- 3 -

trial court agreed with the Commonwealth that the search warrant for Brown's house stated that Verizon reported the "IP address is going back to [Brown's] home." N.T., 8/25/22, at 11-12. The court reasoned that this evidence sufficiently linked the crime to Brown's home. *See id*. at 12. On September 26, 2022, the trial court issued an order denying Brown's motion to suppress.

Subsequently, the Commonwealth filed a Pa.R.E. 404(b) motion seeking to admit evidence of Brown's 2019 juvenile adjudication for possessing child pornography. On January 20, 2023, the trial court conducted a hearing on this motion, as well as Brown's earlier-filed motion to exclude this same evidence. At issue was the audio-recorded statement Brown gave to Detective Davis, claiming that the images found on his computer were "left over" from his prior adjudication. *See* N.T., 1/20/23, at 3, 11-13.

At the hearing, and in its motion, the Commonwealth argued that the trial court should permit the evidence of Brown's prior adjudication to rebut the anticipated defense of mistake or accident — that the images were "mere remnant[s] of the previous" possessing child pornography adjudication. *Id*. at 5. The Commonwealth further argued the evidence would show Brown's state of mind, intent, and knowledge, and serve as *res gestae* evidence. The Commonwealth claimed that Brown would suffer no undue prejudice. Brown contended that he only made the statement because the detective referred to the prior adjudication first during the interview. *See id*. at 9-11.

- 4 -

The trial court ruled that Brown's prior adjudication was admissible, and that the Commonwealth could present the full audio recording of Brown's interview, as well as a transcript of the recording. **See** N.T., 1/20/23, at 14-17. In making its ruling, the trial court reviewed aloud the statements Brown gave to Detective David and pointed out, without dispute, that Brown "repeatedly" stated the images were "remnants from the old offense." **Id**. at 11; **see also id**. at 12-13. The court reasoned:

> Knowledge is always going to be the case, whether I know what's on my computer, whether you can tie it to me, whether I know it's involved, which would seem to be the same type of defense in this case.
>
> I think this interview goes to your intent, your state of mind, absence of mistake, *res gestae*.
>
> * * * *
>
> At a trial for this I don't think any of the facts of the prior adjudication come in other than the fact that he's adjudicated of the child porn sentence and, you know, he had adjudication for this years before.
>
> * * * *
>
> I agree with the Commonwealth. It's impossible to redact the discussion of this. I think the probative value outweighs its prejudicial effect. . . .
>
> * * * *
>
> Defense, submit to me . . . whatever cautionary instruction you want me to read about any of this. I'll do exactly what you say. Show it to the [Commonwealth] first.

**Id**. at 14-16.

On February 27, 2023, Brown's case proceeded to a jury trial. The Commonwealth presented the following evidence. Detective Davis testified that he began his investigation of Brown when he received a cyber tip that originated from Adobe Systems, which reported to NCMEC "that they observed two images of what they believe[d] to be child pornography from a certain IP address." N.T. (Day 2 Jury Trial), 2/28/23, at 135. Brown objected to the testimony on hearsay grounds. The trial court overruled the objection, explaining to the jury:

> Ladies and gentlemen, that cyber tip is not being offered for the truth of the matter saying somebody else is saying child porn and going to what they analyze [*sic*]. The only reason it's being introduced is why the police did what they did once they got the cyber tip.

*Id*. at 135, 137. Later, the Commonwealth introduced a copy of the cyber tip, at which time Brown moved to strike it as hearsay. *See id*. at 139-40. The trial court overruled the motion and again stated that this information was to explain the detective's course of conduct. *See id*. at 140.

On cross-examination of Detective Davis, Brown questioned him about how his investigation in this case began, as well as the origins of the information contained in the cyber tip from NCMEC. *See id*. at 179-82. Detective Davis explained that Adobe Systems submitted its report to NCMEC, which forwarded it to ICAC, which forwarded it to him at Chester County Detectives. *See id*. at 181-82.

Detective Davis testified that after receiving the cyber tip on July 13, 2021, he obtained and executed a search warrant at Brown's residence and seized, among other items, a computer tower that Brown identified as his computer. *See* N.T., 2/28/23, at 57-58, 148-50, 157. Detective Davis placed the items, including the computer tower, into his vehicle and transported them to his office. *See id*. at 159. Detective Davis secured the items overnight in the child abuse unit, which is only accessible by key. *See id*. at 160.

Relevantly, the parties extensively examined the witnesses as to the chain of custody of the computer tower. Detective Davis further testified to the following. The next morning, July 14, 2021, he entered the computer tower into a reporting system, assigned the computer a tag number, and "manually" placed his evidence sticker on it, which bore his name and a description of the evidence. *Id*. at 159-60, 193, 196. Detective Gary Lynch ("Detective Lynch"), the Chester County Detective's evidence custodian, then used an evidence tracking system to create an evidence sticker with a bar code that reflected the time and date when Detective Davis entered the computer into the reporting system. *See id*. at 196-97. Detective Lynch placed this computer-generated evidence sticker, which had the bar code, on Brown's computer. The Commonwealth presented the computer, marked as exhibit C-38, at trial. *See id*. at 190, 196.

Shortly after Detective Davis and Detective Lynch logged and labeled Brown's computer with their evidence stickers, Detective Davis personally

delivered the evidence to the computer forensic unit ("CFU") for analysis. *See* N.T., 2/28/23, at 160, 197. The CFU is in a secure evidence storage room, is not accessible to the public, and is locked at night. *See id*. at 38-39, 121, 160. During workday hours, from 8:30 a.m. to 4:30 p.m. when it is open, only detectives with a special "badge" can enter the CFU. *Id* at 40.

Sam Mullinex ("Mullinex"), who worked for the Chester County Detectives as a forensic analyst at the CFU, testified to the following. After receiving Brown's computer tower and other evidence from Detective Davis, he took photographs of the evidence and documented when they arrived and their condition, color, marks, and anything "obvious." *Id*. at 44-45, 57-58. He then disassembled Brown's computer to photograph the inside, recovered the hard drive from it, and conducted a forensic analysis. *See id*. at 45, 57-58. Brown's computer remained in the CFU until he completed the forensic analysis. *See id*. at 58, 99.

On cross-examination of Mullinex, Brown established that when Mullinex photographed Brown's computer on October 19, 2021, the computer did not have Detective Lynch's computer-generated evidence sticker with the bar code, as it did at trial. *See* N.T., 2/28/23, at 102. Brown also established that Steven Rowe ("Rowe"), another forensic analyst, occasionally worked in the CFU. Rowe performed a "triage"[3] on the hard drive of Brown's computer

_____

[3] A "triage" is a "quick" review of the computer to determine if there is anything of evidentiary value on it. *See* N.T., 2/28/23, at 52-53, 65-66.

before Mullinex took the photographs. *See id*. at 39, 65-68, 104. Mullinex explained that to conduct a triage, Rowe would have had to remove the hard drive. *See id*. Rowe would have then "put the computer back as he found it," according to their procedure. *Id*. at 68.

It appears that at trial, Mullinex opened the back of Brown's computer tower. *See id*. at 105-06. On cross examination, Mullinex agreed that "the [hard drive] almost popped out[,]" and "[i]t was not wired when [he] took it out[.]" *Id*. at 106. Mullinex explained that after his forensic analysis of Brown's computer, he "put it back as close to how [he]received it as possible," and placed the device on the appropriate table in the CFU for Detective Davis to pick up. *Id*. at 47, 98, 106.

In order to show that CFU examined the wrong computer, Brown also questioned Mullinex about Rowe's report, where he recorded the serial number of the hard drive as "WCL3F7AREF90," although the correct serial number was WCC3F7AREF9U. *Id*. at 60, 105, 122. Mullinex explained that Rowe mistakenly typed an "L" when it should have been a "C," and a "zero" when it should have been a "U." *See id*. at 123.

Brown also pointed that the model number of the hard drive, as stated in Mullinex's own report, did not match the model number of the computer tower. Brown thus suggested that "it's some other model." N.T., 2/28/23, at 110. Mullinex responded, "[I]t looks like a typographical error. . . . It looks like I accidentally typed an @ symbol instead of the 2 key." *Id*. at 110.

Additionally at trial, Brown and the Commonwealth agreed to introduce his prior juvenile adjudication for possessing child pornography through a stipulation. The trial court read the stipulation to the jury:

> One, on March 8[,] 2019, . . . Detective John O'Hare from [the] West Chester Police Department filed a juvenile allegation with the Chester County Juvenile Court charging . . . Brown with sexual abuse of children. Specifically, possession of child pornography. . . .
>
> Number two, a formal adjudication hearing was held on October 25[,] October 28[,] and November 26[,] 2019.
>
> Number three, on November 26[,] 2019, the Honorable John Hall found . . . Brown committed the offense of sexual abuse of children, specifically possession of child pornography beyond a reasonable doubt in a time period between January 1[,] 2018 and November 5[,] 2019. . . .

*Id*. at 200.

Immediately after reading the stipulation, the trial court gave the jury a cautionary instruction, explaining:

> Let me give you some instructions on how to view that. You have heard evidence tending to show that [Brown] had been adjudicated of other improper conduct for which he is not on trial. This is not a trial about the prior adjudication. It's a trial about the current charges. I'm speaking of testimony in relation to the 2019 adjudication for sexual abuse of children, specifically pornography. That evidence is before you for a limited purpose. That is to show [Brown's] possible intent, his alleged possession of child pornography and to rebut any claim that his alleged possession of child pornography was accidental or incidental and to explain [Brown's] statements in his interview that he gave to Detective Davis.
>
> The evidence must not be considered by you in any other way other than that purpose I just described. You must not regard this evidence as showing [Brown] is a person of bad character or criminal tendencies to which you might be inclined to infer guilt

- 10 -

on these charges.  So you look at it, it goes to intent, absence of mistake.  View it in the big picture and you don't say he did an adjudication, he must have done this case.  This case, you have to decide separately beyond a reasonable doubt.  Follow me on that principle?  . . .

*Id*. at 201.

Brown testified on his own behalf about the circumstances of his prior juvenile adjudication, explaining that he had voluntarily turned in his school computer for repairs, knowing there was child pornography on it.  ***See*** N.T. (Day 3 Jury Trial), 3/1/23, at 6-7 (unpaginated).  Brown explained that at the time, he was not aware that possessing child pornography was illegal.  ***See id***. at 7 (unpaginated).  Moreover, Brown testified that he learned a valuable lesson from this prior juvenile adjudication.  ***See id***.

Brown further testified to the following.  The computer tower in question was plainly visible to members of his family, because he kept it in the living room of his home.  ***See id***. at 16-18 (unpaginated).  The last time he used that computer was in 2019.  ***See id***. at 18 (unpaginated).  Brown received counseling "about the child pornography issue" for about a year or year and one-half because of his prior juvenile adjudication.  ***Id***. at 15 (unpaginated).  Once he completed counseling, his counselors discharged him, and he did not need further treatment.  ***See id***.

In closing argument to the jury, Brown's counsel argued that the hard lessons Brown learned from the prior juvenile adjudication were the major reasons why it did not happen again in this case.  ***See id***. at 82-83

- 11 -

(unpaginated). During its closing charge to the jury, the trial court provided another cautionary instruction reminding the jury of the limited purpose for which the court admitted Brown's prior juvenile adjudication. *See id*. at 119-20 (unpaginated).

The jury found Brown guilty of all charges — seven counts of possessing child pornography one count of possessing child pornography. On June 26, 2023, the trial court imposed an aggregate sentence of seven to fourteen years' incarceration, followed by ten years of probation.

Brown filed four timely post-sentence motions. On December 26, 2023, when the trial court had not ruled on the motions, Brown filed a notice of appeal. Three days later, the trial court Clerk of Courts denied Brown's post-sentence motions by operation of law. The trial court then directed Brown to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and Brown complied.

Brown raises the following issues for our review:

1. Did the trial court err in allowing evidence of [Brown's] previous adjudication of delinquency for possession of child pornography at trial?

2. Was the jury's verdict against the weight of the evidence in that the Commonwealth did not establish a proper chain of custody with regard to the Dell Inspiron computer and its hard drive which purportedly contained child pornography? Was the weight of the evidence regarding the deficiency in handling of the evidence against the jury's verdict on all charges?

3. Did the trial court err in denying [Brown's] motion to suppress with regard to the illegal search and seizure of the Dell Inspiron computer from [Brown's] home?

> 4. Did the trial court err in allowing hearsay evidence regarding alleged reports from Adobe Systems, . . . Verizon, [and NCMEC] that two digital images depicting child pornography were downloaded on Adobe Systems . . . ?

Brown's Brief at 3.

At the outset, we note that Brown's first and fourth issues challenge the admission of certain evidence at trial. We review the trial court's decision to admit evidence for an abuse of discretion. *See Commonwealth v. Hairston*, 84 A.3d 657, 664 (Pa. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id*. at 664-65 (citations omitted). "[T]he appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citation omitted).

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if (a) it has the tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" Pa.R.E. 401.

In his first issue, Brown argues that the trial court erred when it admitted evidence of his prior juvenile adjudication for possessing child pornography under Pa.R.E. 404(b)(2). "Generally, evidence of prior bad acts

- 13 -

or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity." **Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009) (*citing* Pa.R.E. 404(b)(1)). Such evidence is admissible, however, when it is relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. **See id**. (*citing* Pa.R.E. 404(b)(2)). Pennsylvania law also recognizes the *res gestae* exception to Rule 404(b), "permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" **Hairston**, 84 A.3d at 665 (citations omitted).

The trial court may admit prior bad acts evidence however, "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). This Court recognizes that "the trial court is obliged to balance the probative value of such evidence against its prejudicial impact." **Commonwealth v. Ross**, 57 A.3d 85, 98 (Pa. Super. 2012) (*en banc*) (citation omitted). However, our Supreme Court has explicitly recognized that a trial court is not required "to articulate its balancing test on the record." **Hairston**, 84 A.3d at 667. Rather, "[w]e presume that trial courts know the law . . . [and s]uch weighing and the general consideration of the admissibility of evidence is a discretionary ruling which trial courts routinely engage in mentally. **There is no requirement that it record these mental deliberations on the record**." **Id**. (emphasis added).

As this Court has explained:

To establish one of the exceptions set forth in Rule 404(b)(2), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question[.]" Additionally, the term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." "[W]hen weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence."

*Commonwealth v. Gilliam*, 249 A.3d 257, 271–72 (Pa. Super. 2021) (citations omitted). "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011) (citations omitted). Furthermore, the trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Hairston*, 84 A.3d at 666 (citation omitted).

The Crimes Code defines the offense of possessing child pornography as follows: "**(d) Child sexual abuse material.** Any person who intentionally views or knowingly possesses or controls any child sexual abuse material or artificially generated child sexual abuse material commits an offense." 18 Pa.C.S.A. § 6312(d).

Brown asserts that the trial court abused its discretion by admitting evidence of his prior juvenile adjudication for possessing child pornography at trial. He avers: (1) the evidence did not meet any of the exceptions pursuant to Pa.R.E. 404(b)(2); and (2) the trial court "fail[ed] to conduct the required

- 15 -

balancing test which would have shown that this evidence's prejudicial impact clearly outweighed its probative value." Brown's Brief at 14, 28.

Instantly, the trial court admitted the evidence of Brown's prior juvenile adjudication under Pa.R.E. 404(b)(2) to show motive, intent, identity and/or absence of mistake or accident. The trial court also found that the evidence helped form the history of the case and allowed the Commonwealth to admit it as *res gestae* evidence. The trial court reasoned:

> [T]he Commonwealth wanted to introduce evidence pertaining to [Brown's] prior adjudication for the same offenses [of possessing child pornography that] he was charged with here. This evidence was not being admitted to prove [Brown's] character in order to show conformity therewith. It was being admitted in order to show motive, intent, identity, and/or absence of mistake or accident as permitted by Pa.R.E[]. 404(b)(2). In addition, the prior incidents help form the history of the case.
>
> Moreover, part of [Brown's] defense was that the photographs found on his computer were left over from the time of his previous offense. There was no way for [Brown] to prove this defense or for the Commonwealth to disprove it without bringing up the prior incident. Based on this, the court correctly found that the probative value of the evidence relating to the prior incident outweighed any prejudice to [Brown]. Thus, evidence of the prior incident was admissible pursuant to Pa.R.E[]. 404(b).

Trial Court Opinion, 4/10/24, at 3 (citations omitted and paragraph break added). Furthermore, the trial court reasoned that it mitigated any potential prejudice by giving the jury cautionary instructions as to the limited purpose it should consider the evidence.

Upon review, we conclude that the trial court did not abuse its discretion when it held that the evidence of Brown's prior juvenile adjudication was

- 16 -

relevant and admissible at the underlying trial for possessing child pornography. *See Hairston*, 84 A.3d at 664; *see also* 18 Pa.C.S.A. § 6312(d) (requiring the Commonwealth to prove the intentional and knowing possession or control of child pornography). At the Rule 404(b) hearing, the trial court extensively discussed that evidence of Brown's prior adjudication was relevant to rebut his anticipated defense of mistake or accident — that the images were merely remnants of his prior adjudication. Relatedly, the trial court further found the evidence was admissible under Pa.R.E. 404(b)(2) to show Brown's motive, intent, and identity, and to show the history of the case. *See* Pa.R.E. 404(b)(2); *see also Hairston*, 84 A.3d at 666 (citations omitted); *Sherwood*, 982 A.2d at 497. On appeal, Brown does not acknowledge, let alone dispute, the trial court's reasoning. In the absence of any challenge to its discussion, we could affirm the trial court's admission of the evidence on this basis alone. Additionally, we reiterate that while the trial court must weigh the prejudicial effects of evidence, it was not required to "sanitize the record" of every negative inference against Brown. *Hairston*, 84 A.3d at 666 (citation omitted).

We are satisfied from the trial court's discussion that it understood the applicable criteria and mentally engaged in the appropriate balancing test of the evidence's probative value and potential prejudice. *See* Pa.R.E. 404(b)(2). There is nothing in this record to suggest that the trial court did

not understand its duty to weigh these competing interests in accord with Rule 404(b)(2). *See Hairston*, 84 A.3d at 667.

Furthermore, our review of the record shows that, in balancing the Commonwealth's need for the evidence against the potential prejudicial effect on Brown, the trial court properly gave the jury cautionary instructions about the proper use of the proffered evidence. *See* Pa.R.E. 404(b). The trial court explained that after the introduction of the evidence and again during the closing charge:

> the court properly instructed the jury on the limited purpose for which this evidence was admitted. [*See* N.T., 2/28/23, at 201; *see also* N.T., 3/1/23, at 119-20 (unpaginated).] . . .
>
> * * * *
>
> The court's limiting instructions properly advised the jury that [Brown] was not on trial for any actions concerning the prior adjudication. The jury was told that this evidence was only brought in for the purpose of showing intent and absence of mistake, and that it should not be viewed as evidence of guilt of any crime.

Trial Court Opinion, 4/10/24, at 4.

Here, the trial court's limiting instructions minimized the likelihood that the evidence of Brown's prior juvenile adjudication for possessing child pornography inflamed the jury or caused it to convict him on an improper basis. *See Hairston*, 84 A.3d at 666. We presume that jurors follow the trial court's instructions. *See Chmiel*, 30 A.3d at 1184. On appeal, Brown ignores the trial court's discussion about the cautionary instruction and final jury charge and makes no claim that the instructions were insufficient. We

conclude, therefore, on this basis as well, that the trial court did not commit error in admitting this evidence. **See Sherwood**, 982 A.2d at 497–98 (finding that cautionary instructions were sufficient to overcome the prejudicial effect of prior bad acts evidence). Accordingly, Brown is not entitled to any relief on this issue.

In his second issue, Brown challenges the Commonwealth's chain of custody for the computer tower and its hard drive, arguing that the jury verdict was against the weight of the evidence. This Court's standard of review of a weight of the evidence claim is well-settled:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). When an individual challenges the weight of the evidence, they assert that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (citation omitted). Further, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence, and to assess the credibility of witnesses. As to these issues, an appellate court

cannot substitute its judgment for that of the finder of fact." ***Commonwealth***

***v. Treiber***, 874 A.2d 26, 30 (Pa. 2005) (citations omitted).

> Concerning gaps in the chain of custody, this Court has stated:
>
> There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remain unimpaired until they were surrendered to the court. . . .
>
> . . . Physical evidence may be properly admitted despite gaps in testimony regarding custody. [Furthermore, g]aps in the chain of custody . . . go to the weight of the evidence and not its admissibility.

***Commonwealth v. Feliciano***, 67 A.3d 19, 29 (Pa. Super. 2013) (*en banc*)

(citations, quotation marks, and some punctuation omitted).

Brown contends on appeal that the Commonwealth failed to establish a

sufficient chain of custody for the computer tower, and its hard drive

recovered from his residence. ***See*** Brown's Brief at 33. After reciting the

relevant applicable law, Brown argues:

> While [Brown] recognizes the physical evidence such as the Dell Inspiron computer in this case may be properly admitted despite gaps concerning its custody, defense is compelled to point out that this is more than a gap in the chain of custody. In this case, the testimony presented by the Commonwealth proves that different computers and different hard drives with different labels and serial numbers were analyzed by forensic analysts under the belief that they were analyzing evidence seized from [Brown's] home. [Brown] highlights that different analysts examined different items of evidence — with a label and without a label and different serial numbers.
>
> Furthermore, the evidence presented by the Commonwealth shows that the hard drives were not properly secured in the

computer cases. The hard drive presented at trial fell out of the computer. . . . Mullinix testified that it was not properly secured.

. . . The only thing linking [Brown] with this crime was the hard drive. A proper chain of custody was not presented. The Commonwealth failed to establish a chain stretching from the tower seized at [Brown's] home to the hard drive examined which contained illegal images.

*Id*. at 38-39.

The trial court found that Brown's claim had no merit and the jury's verdict did not "shock one's sense of justice." Trial Court Opinion, 4/10/24, at 5. The court considered:

[Brown's] counsel extensively questioned the witnesses about the chain of custody of the computer. Any alleged inconsistencies with regard to evidence stickers and serial numbers were examined at length during the Commonwealth's direct testimony and defense counsel's cross-examination. The witnesses were able to thoroughly discuss the chain of custody and the error when documenting the computer's serial number. The jury clearly found their explanations to be satisfactory, and found the witnesses to be credible. A review of the trial transcripts shows that this conclusion was reasonable in light of the testimony introduced at trial.

*Id*. at 6.

Upon review, we conclude that the trial court did not abuse its discretion in finding that the jury's verdict did not shock one's conscience. ***See Lyons***, 79 A.3d at 1067. On appeal, Brown wholly ignores the trial court's discussion that both parties extensively questioned the witnesses about the chain of custody regarding his computer. The witnesses were able to thoroughly discuss the chain of custody and the errors when documenting the hard drive's serial number, as well as the model number of the computer. The jury, as the

factfinder, was free to find the witnesses credible and their explanations satisfactory — that Brown's computer remained safely secured from the time Detective Davis confiscated it. **See Treiber**, 874 A.2d at 30. A review of the record shows that this conclusion was reasonable considering the testimony introduced at trial. Accordingly, Brown's second issue lacks merit.

In his third issue, Brown claims that the search warrant for his home violated the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Specifically, Brown argues that the probable cause for the search warrant was based on "uncorroborated hearsay" — the NCMEC cyber tip — and the trial court should have suppressed any evidence seized under it. Brown's Brief at 47-48. Brown has waived this claim because he failed to raise it before the trial court.

"[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." **Commonwealth v. Freeman**, 128 A.3d 1231, 1241 (Pa. Super. 2015) (citation omitted); **see also Commonwealth v. Thur**, 906 A.2d 552, 566 (Pa. Super. 2006) (explaining "[w]hen a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression").

This Court has stated:

> It is well-settled that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.

*Commonwealth v. Metzer*, 634 A.2d 228, 233 (Pa. Super. 1993) (citations omitted).

Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." *Commonwealth v. McDonald*, 881 A.2d 858, 860 (Pa. Super. 2005) (*citing* Pa.R.Crim.P. 581(D)). Thus, when a defendant's motion to suppress does not assert specific grounds for suppression, they cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. *See id*. at 860.

As stated above, Brown's suppression arguments before the trial court were limited to a claim that the original cyber tip stated only that child pornography images "sent to the laptops at the school[,]" and there was no nexus to his house. N.T., 8/25/22, at 7. Nowhere in his motion to suppress did Brown aver the theory currently presented on appeal — that the search warrant for his home was based on "uncorroborated hearsay." Moreover,

- 23 -

when the trial court asked Brown, on the record at the commencement of the suppression hearing, to state his basis for requesting suppression, Brown did not raise such an argument. *See* N.T., 8/25/22, at 7. Brown's failure to advance this precise legal theory in the first instance before the trial court renders his third claim waived. *See Freeman*, 128 A.3d at 1241.

Brown's fourth issue relates to the admission of testimony about the cyber tip that Detective Davis received from NCMEC, that two digital images depicting child pornography were downloaded on Adobe Systems. Brown challenges this evidence as impermissible hearsay. Hearsay is a statement that "the declarant does not make while testifying at the current trial . . . and . . . a party offers in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c)(1), (2). Hearsay is inadmissible "unless it falls within an exception to the hearsay rule." *Commonwealth v. Mosley*, 114 A.3d 1072, 1084 (Pa. Super. 2015); *see also* Pa.R.E. 802. Such exceptions include statements that would establish motive, the existence of a plan, or "complete the story." *Commonwealth v. Levanduski*, 907 A.2d 3, 13 (Pa. Super. 2006) (*en banc*). Specifically, we have observed:

> "[S]ometimes, out-of-court statements are offered not to prove the truth of the matter asserted but, for example, to explain the course of conduct undertaken by an investigating police officer. Such statements are not hearsay." "It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted."

*Commonwealth v. Manivannan*, 186 A.3d 472, 483 (Pa. Super. 2018) (citations and parentheses omitted).

Brown argues that the trial court erred in allowing Detective Davis to testify about the cyber tip he received from NCMEC — that two digital images depicting child pornography were downloaded on Adobe Systems — because it was inadmissible hearsay. *See* Brown's Brief at 49. Brown further contends that this testimony represented "hearsay upon hearsay upon hearsay" and the Commonwealth did not call any witnesses to establish the authenticity and admissibility of the information. *Id*. at 50.

The trial court found that Brown's claim was without merit because the Commonwealth did not offer the testimony to prove the truth of the matter asserted. The court reasoned: "To the contrary, the evidence was offered to show the effect the information had on the witnesses, and to explain their actions upon receiving the information, *i.e.*, their course of conduct. Since this is permissible under statutory and case law, the court properly allowed the evidence in at trial." Trial Court Opinion, 4/10/24, at 7.

Upon review of the record, we determine the trial court did not abuse its discretion in admitting the evidence. *See Hairston*, 84 A.3d at 664. On appeal, Brown wholly fails to address the trial court's reasoning — that the Commonwealth did not present Detective Davis's testimony to prove that Brown unlawfully possessed child pornography. *See Manivannan*, 186 A.3d at 483. Instead, evidence of the cyber tip merely showed why Detective Davis

commenced an investigation. Accordingly, contrary to Brown's claim, the statement did not meet the definition of hearsay, and thus the general rule against hearsay did not apply. *See* Pa.R.E. 801(c)(2), 802.

Furthermore, Brown does not address the cautionary instruction that the trial court gave the jury when it overruled his objection to the testimony. As stated above, the court specified that "the cyber tip is not being offered for the truth of the matter" — whether the images were indeed child pornography. N.T., 2/28/23, at 137. Instead, the court explained, the only reason the evidence was "introduced [was to show] why the police did what they did once they got the cyber tip." *Id*. We presume the jury understood this instruction, and in any event, Brown raises no issue that the instruction was insufficient. *See Chmiel*, 30 A.3d at 1184. As such, the trial court did not abuse its discretion by admitting Detective Davis's testimony about the cyber tip. Thus, Brown's claim fails on this basis.

For the foregoing reasons, we determine Brown is not entitled to relief on any of his issues. We thus affirm Brown's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2025